## BAKER & TAYLOR CO. v. UNITED STATES.

## SAME v. BOWERS, Internal Revenue Collector.

District Court, S. D. New York. September 9, 1927.

**Internal revenue ⟨key⟩7(17), 9(27)—Payments from net earnings on account of good will purchased by corporation not to be credited as "invested capital" in computing income or profits taxes.**

A corporation, which took over the business and property of a predecessor and issued income bonds to the stockholders of the predecessor for the estimated value of its good will, payable only from future net earnings, though it subsequently paid the bonds from net earnings, *held* not entitled to credit for the amount as "invested capital," in computing income and profits taxes.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Capital Invested.]

Actions at law by the Baker & Taylor Company against the United States and against Frank K. Bowers, Collector of Internal Revenue. Judgments for defendants.

Wm. E. Russell, of New York City (Jos. B. Miller, of New York City, of counsel), for plaintiff.

Charles H. Tuttle, U. S. Atty., of New

York City (Samuel C. Coleman, Asst. U. S. Atty., of New York City, of counsel), for defendants.

MACK, Circuit Judge. Plaintiff claims the recovery of income and profits taxes paid under an alleged erroneous assessment for the years 1917 to 1921, inclusive.

The charter of plaintiff's predecessor, the Baker & Taylor Corporation, expired by limitation in February, 1906, and its assets vested by operation of law in its two stockholders in the proportion of 9 to 1. Plaintiff corporation was organized a few days thereafter, and four months later the two stockholders sold all of the assets of the old company to the new one. These assets, exclusive of good will and of the undivided profits of the preceding year, which latter were taken over by the old company as an indebtedness to the two stockholders, aggregated over and above the assumed liabilities exactly the amount of the capital stock, $40,000. The agreement for the transfer provided that the two stockholders sell their undivided nine-tenths and one-tenth respective interest or shares in the business and assets of the old corporation in exchange for 360 and 40 shares, respectively, of the capital stock of the new corporation, par value $100, and 36 and 4, respectively, of income bonds of $10,000 each of the new corporation. These income bonds bore interest at the rate of 6 per cent. per annum, and were payable "only from the net earnings of the * * * company, ascertained and declared by its board of directors to be applicable to such payment of principal and interest after appropriating to the capital account of said corporation such portion of said earnings as the said board of directors may deem advisable. In the event that the accumulated net earnings of the said * * * company are insufficient to pay the principal hereof at maturity or any unpaid interest due thereon, then this obligation shall be paid from said net earnings as, when, and as soon as said net earnings are ascertained and declared by its board of directors." The bonds were redeemable at the company's option at any time before maturity, and were payable to the two stockholders respectively by name "or assigns."

The resolution of purchase recited that the undivided shares in the business and assets is reasonably worth the stock, bonds, and the undivided interest in the last year's profits.

The bonds were not carried on the books of the company as a liability, and good will was not carried as an asset. From time to time during the succeeding 7 years the entire issue of bonds with interest was paid off, and each payment so made was charged against surplus account, created by crediting thereto the profits annually as earned.

For the four years preceding plaintiff's incorporation, the net earnings of the predecessor corporation had averaged $42,000, and its net tangible capital $154,000.

Plaintiff's capital stock was increased to $200,000 in April, 1913. The $160,000 increase was paid to the extent of $86,000 by notes previously given by the corporation to the stockholders in partial redemption of the bonds, and the balance was paid in cash.

The question presented is whether or not the claimed cost of the good will, $400,000, was properly excluded from claimed invested capital by the commissioner, whose ruling was sustained by the Board of Tax Appeals.

Undoubtedly the good will of the old corporation had a substantial value in April, 1906, a value of approximately $200,000. Such a value would be arrived at by charging against the earnings interest on the net tangible assets at .8 per cent., and treating the balance of the earnings as representing approximately 15 per cent. of the value of the good will. See Appeal of Herald-Despatch Co., 4 B. T. A. 1096, 1100, 1108.

The difficulty in the instant case is not due to the mere failure to make proper entry in the books of account; this is always susceptible of correction in ascertaining the facts themselves on which taxes are to be computed; the trouble here is that these bonds were not definite liabilities of the corporation, and as such representing the purchase price of the good will; they could not properly have been entered as corporate liabilities to offset a good will asset of the same amount or indeed of any amount. Indeed, the resolution respecting the purchase from the two stockholders does not assert that the business is reasonably worth the face of the stock bonds and undivided profits, but that it is reasonably worth "the said stock bonds and the said * * * profits" of the past year. That assertion is sound, but it leaves unsolved either the actual value of the bonds or the value placed upon them by the plaintiff or the stockholders who accepted them.

These bonds were payable until maturity only out of so much of the net earnings as the board of directors might not set aside for capital account, and after maturity only out of the net earnings of the company. They had no standing as against creditors. The relative rights of these bondholders and of stockholders need not be determined. The

only fund out of which they could be paid was the same fund out of which stockholders could be paid a dividend; namely, the net earnings of the company.

The bonds were not negotiable. They were payable to the stockholder or his assigns. They were assignable, however, without a contemporaneous assignment of the stock. Theoretically, at least, the stock and the bonds might have been held by different persons. That they were not in fact so held is immaterial.

It must, however, have been clear that bonds of this character when issued had no real value in the market, and that, despite the earnings of the predecessor company, which would have justified the issuance of full liability bonds to the extent of approximately $200,000. In substance, the transaction amounted to a present transfer of the good will, to be paid for only as an actual value thereof might be demonstrated through future earnings, but, in that event, up to a valuation of $400,000 as of April 1, 1906. In other words, instead of valuing the good will and taking it over for a present liability of $200,000, the parties agreed that it should be taken over without valuation, to be paid for only if and to the extent that it demonstrated by reason of future earnings that it had a value, but in that case the demonstration was to be permitted to double the fairly permissible valuation as of April 1, 1906. It follows, therefore, that it cannot be said that in April or in June, 1906, anything was paid for good will.

Plaintiff contends, however, that, when and as the bonds were redeemed, the good will was paid for, and, as the entire redemption was made before 1917, the good will must be deemed to have been purchased for the $400,000 in cash, and thus have taken the place of earned surplus to that amount; that therefore, even though not entered as an asset on the books of the company, it must be deemed as part of the invested capital for the period in question. It contends that its situation is the same as if it had borrowed $400,000 in cash on its note with which to purchase the good will, and had subsequently paid off the note out of earnings. But even in such a case the good will bought for $400,000 would not be included in the invested capital at that amount, unless at the time of purchase it were actually worth that much. The analogy, however, does not hold good. The income bonds did not represent a present liability of the company; they represented merely a right to payment if and

when the fund out of which they are to be paid comes into existence.

In substance and fact, the fund out of which dividends could be paid was at the very inception divided into two parts. One of those parts was to have priority over the other, and, in consideration thereof, the good will was granted. It was not purchased from time to time, and to the extent that payment was made pursuant to the original agreement. It was completely acquired in 1906, and when acquired nothing was given therefor except the agreement to pay if and when it might demonstrate a value by reason of earnings thereafter to be made.

It is unnecessary to discuss in detail section 207(a) of the Revenue Act of 1917 (Comp. St. § 6336⅜h), section 326 (a) (b) of the Revenue Act of 1918 and 1921 (Comp. St. § 6336⅛i), article 60 of the Treasury Department Regulations No. 41, Act of 1917, article 842 Treasury Department Regulations No. 45, Act of 1914, or article 842 Treasury Department Regulations No. 62, Act of 1921. It suffices to say that the good will was not paid for in cash or tangible property or shares of the capital stock, that in no sense can it be deemed earned surplus, and that, if in any sense it could be called paid-in surplus, such surplus is included in invested capital only when represented by tangible property.

Agreeing substantially with the opinion rendered by the Board of Tax Appeals, I conclude that the motion to dismiss must be granted.