## PATTERSON v. COMMISSIONER OF INTERNAL REVENUE.

### No. 61.

Circuit Court of Appeals, Second Circuit.

May 12, 1930.

Robert H. Montgomery, of New York City (Thomas G. Haight, of Jersey City, N. J., J. Marvin Haynes, of Washington, D. C., and Roswell Magill, of Chicago, Ill., of counsel), for petitioner.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key and Andrew D. Sharpe, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Dean P. Kimball, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before L. HAND, CHASE, and MACK, Circuit Judges.

PER CURIAM.

The single question raised by the petition is the disallowance of a deficiency claim-

ed by Patterson, the petitioner, arising from the sale of stock. In 1919 he sold for $1 two thousand shares of common stock in the International Mail Equipment Company, the shares being conceded at that time to be worthless. These he acquired in March, 1911, and asserts that at that time and two years later they had a value of $100; the ensuing loss he seeks to deduct from his income in 1919. The Commissioner fixed $16.36 as cost at acquisition and value on March 1, 1913, and calculated Patterson's loss accordingly. This the Board affirmed on the ground that there was no evidence showing the shares to have had a higher cost or value. The question is whether they should have found otherwise, and, unless the evidence admitted no alternative, we may not intervene. Bedell v. Commissioner of Internal Revenue, 30 F. (2d) 622 (C. C. A. 2); Andrews v. Com'r of Internal Revenue, 38 F.(2d) 55 (C. C. A. 2).

For some years before 1911, one Harris, with Lamar as a partner, had held the shares of a small Georgia company which owned some patents for a new sort of rural mail box. Lamar had died, and Harris was liquidating the firm; he met Patterson, who was on the outlook for promising ventures, and the two came to a bargain by which, for $20,-000, Harris was to convey to Patterson the shares in the Georgia company together with other patents which the firm owned, and a contract with the Canadian government to supply 100,000 boxes at $3 apiece, which had for the most part been already performed. There was also some prospect of contracts with New Zealand and Australia and of added contracts with Canada.

Patterson in turn passed what he had so received to the International Mail Equipment Company in March, 1911. In exchange he got 10,000 shares of its common, and 370 shares of its preferred stock; 3,333 of the common shares were given to Harris, and 667 left in the treasury; 630 preferred shares were then sold for cash. Patterson was acting for Duke and Cunliffe-Owen, jointly with himself; these two being men of wealth and thought to be of consequence among financiers. Harris had apparently, though this rests upon inference, made the allotment of his shares a condition upon the trade. Patterson then divided 6,000 common shares between himself and the other two, and held his third till the sale in March, 1919.

The company completed the Canadian contract, from which it had a net profit of about $130,000 in 1911, and got another in 1914, on which the profits were $220,000 in that year. Aside from these, it suffered losses in every year but one, but it declared a common dividend of 5 per cent. in 1911, 6 per cent. in 1912, and 20 per cent. in 1914, and the preferred dividends were paid until the middle of 1915. The outbreak of the Great War put an end to any further possibilities with Canada, and the negotiations with New Zealand and Australia never resulted in anything. At one time the United States Post Office Department showed some interest in the boxes, but fell away because of its unwillingness to deal in a patented device. A broker, who did the business of Duke's companies, swore that in his judgment both in March, 1911, and 1913, the shares were worth par, but they had never been marketed on an exchange or otherwise, and the Board declined to take the estimate seriously.

Aside from the foregoing and generalities based upon the influence of the financiers' connection upon the value of the shares, nothing was introduced by which the Board could fix the value. Patterson's position is that the reasonable expectations of new business were so high that it was incredible the shares could be worth so little as the Commissioner found. He also insists that the directors' acceptance of the assets at so large a capitalization could not be ignored. We see nothing in all this to justify our intervention. Had the Commissioner found the value at $16.30, we think we could divine how he proceeded; for a valuation of the assets at $200,000 would so result. Subtract the preferred stock, $37,000, and the value of the common shares comes out at $16.30. We cannot account for the added 6 cents, but the difference is unimportant. How anyone can say that such property, just bought for $20,000, was undervalued when multiplied by ten, is not apparent to us. The broker's testimony was surely not conclusive; the Board saw him and made their own estimate of the credence to be given him. If the shares had any such value as he put upon them, it could hardly have been due to the opinion of informed buyers. At any rate, it is impossible at this day to argue that such testimony must be taken as unquestioned verity. The capitalization of the company is of no moment at all upon such an issue.

Probably it is true that the holder of such shares must usually be content with the guess of the Commissioner, because, when property is not sold on an open market where a number of buyers can establish its value, it will seldom be possible to contradict the first

honest judgment formed. The inquiry is essentially conjecture, and the most that courts can do is to correct obvious abuses. In the case at bar, almost any figure is as good as another between ten and twenty dollars; indeed it would be hard to say that a valuation of less than $10 was plainly wrong. We doubt that we should have done as well by the petitioner as the Commissioner, had we been in his place.

Decision affirmed.