USHCO MFG. CO. v. COMMISSIONER
OF INTERNAL REVENUE.

No. 43.

Circuit Court of Appeals, Second Circuit.

Nov. 5, 1945.

822

W. W. Spalding, of Washington, D. C., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, A. F. Prescott, and Leonard Sarner, Sp. Assts. to Atty. Gen., for respondent.

Before L. HAND, CHASE and FRANK, Circuit Judges.

CHASE, Circuit Judge.

The sole issue which must be resolved on this petition to review a redetermination by the Tax Court of a deficiency in the excess profits taxes of the petitioner for each of the fiscal years ending June 30, 1941 and June 30, 1942, is whether the valuation of the petitioner's intangible assets was erroneous. The petitioner was entitled in each of the taxable years to an excess profits credit computed as provided in § 714 of the Internal Revenue Code as amended by § 201 (b) of the Revenue Act of 1941, c. 412, 55 Stat. 687, 26 U.S.C.A. Int.Rev.Code, § 714. The computation to determine the amount of the credit is to be made on the value of the invested capital of the taxpayer in accordance with the provisions of § 718 of the Internal Revenue Code, as added by § 201 of the Second Revenue Act of 1940, 26 U.S.C.A. Int. Rev.Code, § 718. The pertinent subsection is (a) (2) which provides, in so far as is now material, that in determining the equity invested capital there shall be included property (other than money, and regardless of the time it was paid in) which had been previously paid in for stock; and that such property shall be included in an amount equal to its unadjusted basis for determining loss upon a sale or exchange.

The facts were stipulated. The taxpayer was organized in 1901 under the laws of New York as the U. S. Hame Company and afterwards changed its name to Ushco Manufacturing Company. Its principal place of business was in Buffalo, N. Y., and it kept its books and filed its returns on the accrual basis during the years here involved. It manufactured and sold hames and saddlery products.

Part of its assets were acquired in July 1902 when it exchanged 8000 shares of its common stock, having a par value of $100 a share for all of the intangible assets of four corporations and obtained their tangible assets for other consideration. At that time the valuation of the acquired assets was made by an appraisal committee representing the interests of all concerned and it is not disputed that the valuations placed upon the assets of each of the constituent corporations was the result of arm's length negotiations inter partes. In November 1905 the petitioner also acquired all the tangible and intangible assets of the Auburn Hame Company, exchanging 700 shares of its capital stock for the intangibles.

In computing its excess profits credit for 1941 and 1942, the petitioner took as the value of its equity invested capital the sum of $695,000 for its tangible assets and

$870,000 for its intangible assets, the latter being the sum of the par value of all of its shares which had been exchanged for intangibles as above stated. The Commissioner accepted the petitioner's valuation of its tangibles but found the value of its intangibles to be only $373,800, the result of capitalizing at 15.2% the earnings allocable to the intangibles, that is, the average net income of the constituent companies for the three and one half years just before July 1902 less an 8% return on the agreed value of the tangibles. See A. R. M. 34, 2 Cum. Bull. 31 (1920); A. R. R. 295 I. I., 2 Cum. Bull. 202 (1920); A. R. R. 252, 3 Cum. Bull. 44 (1920). The Tax Court approved the action of the Commissioner and redetermined the deficiency for each year accordingly.

■ Enough has now been said to make it obvious that the decisive issue is whether the taxpayer has shown that the Tax Court erroneously decided a question of fact when it found the value of the petitioner's intangibles for the purpose of computing its excess profits credit. The finding is controlling in this court unless shown to have been without any substantial basis. Guggenheim v. Helvering, 2 Cir., 117 F. 2d 469; Patterson v. Commissioner, 2 Cir., 42 F.2d 148.

■ The Commissioner's determination of the amount of the equity invested capital under § 718(a) (2) of the Internal Revenue Code, supra, which should be attributed to intangibles required him to find their cost. That was, of course, the value of the shares of petitioner's common stock at the time they were exchanged for the intangible property. Hazeltine Corp. v. Commissioner, 3 Cir., 89 F.2d 513, 518. The parties agree that it is impossible to fix the fair value of stock so exchanged except by attributing to it the fair value of the intangibles at the time it was issued for them. Their disagreement as to the value of those intangibles and how it should be determined is the nub of their dispute.

The taxpayer's principal position on this question is that because the interested parties, some forty years before, fixed the value in the manner and at the amount of the par value of the stock as above stated the Commissioner was bound to do likewise and the Tax Court erred in not so holding. A subsidiary question is whether the intangibles acquired from the Auburn Hame Company in 1905 were given any value at all.

■ The facts as stipulated were rather meagre on the question of value. There was no evidence of any sale of the stock which was, and always had been, closely held, and no evidence of any sale of any of the intangibles was offered. There was, indeed, no proof of what went to make up the intangible property either in kind or amount and nothing to show the standing of the corporations in the industry, how they had been managed or what they had accomplished, except that it was stipulated that each of the companies had been in existence for more than five years before their assets were acquired by the petitioner and that the average net earnings of all of them, including the petitioner, was between $110,000 and $115,000 a year "for the period of three and one-half years immediately prior to July 1902." There was, accordingly, no way for the Tax Court to fix value by the exercise of its own judgment in the light of its general knowledge and experience. See National Weeklies v. Commissioner, 8 Cir., 137 F. 2d 39. Furthermore, no expert testimony as to value was introduced. See Sanitary Co. of America v. Commissioner, 3 Cir., 34 F.2d 439.

The Commissioner, unwilling to take at face value the petitioner's par value method of valuation, used the formula stated in A. R. M. 34, 2 Cum. Bull. 31 (1920). Although that was not the only possible way he could have fixed the value of the intangibles, it is a permissible method in some instances. Pfleghar Hardware Specialty Co. v. Blair, 2 Cir., 30 F.2d 614; White & Wells Co. v. Commissioner, 2 Cir., 50 F.2d 120. See also Baker & Taylor Co. v. United States, D. C., 21 F.2d 787, affirmed 2 Cir., 26 F.2d 187; Robertson v. Routzahn, 6 Cir., 75 F.2d 537.

■ In this instance the Commissioner and the Tax Court had no alternative but to use the formula or accept the petitioner's own valuation unsupported by proof of more adequate facts than have been mentioned. Certainly the petitioner's own valuation was not binding upon them. Bonwit Teller & Co. v. Commissioner, 2 Cir., 53 F.2d 381, 82 A.L.R. 325; Patterson v. Commissioner, supra; Rogers v. Helvering, 2 Cir., 107 F.2d 394. And the weight to be given it was properly to be determined in the light of the circum-

824

stances under which it was made. The purposes of the parties may well have been attained by the fixing of relative values rather than actual values at that time. As the Tax Court pointed out: "Although the parties may have been dealing at arm's length, it is conceivable that they might not have been interested in the amount of par value common stock issued to each company as long as such stock was issued in proportion to the respective interests of each company."

The petitioner further insists that even if the use of the formula was a proper method of valuing the intangibles, the result was wrong because 15.2% was the rate used in capitalizing the earnings attributable to them though the percentage actually earned was less. (The tangible assets were valued at $695,000 when the petitioner acquired them and the Commissioner has accepted that valuation. The petitioner paid for them with $535,000 of its 6% preferred stock and $160,000 of its 5% bonds.) It has worked out the actual percentage earned before the acquisition date by taking the mean between the high and low net earnings as stipulated for the three and one-half years before July 1902. From this $112,500 it first deducts $32,100 which is the six per cent dividend on the preferred stock and gets $80,400 as the earnings attributable to the intangible assets or about ten per cent according to its calculation. For five years after the assets were acquired the net average operating profits of the petitioner were $143,627.-44 which left over $110,000 after dividends on the preferred stock were paid, attributable to earnings on the intangible assets. So it argues both that the capitalization rate used in the formula was too high in the light of actual earnings and too high theoretically for a company making a product like hames for which there was a stable demand.

These were factors for the consideration of the Tax Court in deciding what in fact was a reasonable rate for capitalizing the earnings of the tangibles. The determination of that required the exercise of expert judgment and the particular conditions in each case have to be analyzed in the light of the experience and knowledge in such matters which the judges of that court possess. Granted that the petitioner's business is properly to be classified as nonhazardous, the 15.2% rate used is not out of line with that used in fairly similar in-

stances. See Dwight & Lloyd Sintering Co. v. Commissioner, 1 B. T. A. 179; Herald-Despatch Co. v. Commissioner, 4 B. T. A. 1096; Otis Steel Co. v. Commissioner, 6 B. T. A. 358; Schilling Grain Co. v. Commissioner, 8 B.T.A. 1048. Cf. Dewing, Financial Policy of Corporations (3d Ed. 1934) 175. Moreover with nothing in this record to show what the intangibles were, or what were the especial problems of the business, there is no sound basis for attacking the rate used in the formula. See 2 Paul, Federal Estate and Gift Taxation (1942) §§ 18.31, 18.32; 10 Mertens, Law of Federal Income Taxation (1942) §§ 59.42, 59.39.

The most troublesome criticism of the decision is found in the petitioner's argument that the Tax Court failed to take into account the value of the intangibles acquired in 1905 from the Auburn Hame Company. The stipulation is not clear on that point but it is equally ambiguous as to the inclusion of the tangible assets of Auburn in the agreed value of $695,000. It is, however, fair to assume that the value of the tangible assets of Auburn were included else the petitioner's contention that no effect was given to its acquisition of Auburn's intangibles would have spread to that. The stipulated valuation of the tangibles is for the period of three and one-half years immediately preceding July 1902. In the same paragraph of the stipulation the average net earnings of the petitioner and "of all said companies," Auburn being one of "said companies," was given for the same period at from $110,000 to $115,000 annually. The petitioner, having the burden, was bound to show that the earnings of Auburn were not included and thereby given the same effect in valuing the petitioner's intangibles as were those of the other companies acquired earlier. It did not discharge that burden when it merely left the record uncertain. We cannot presume error. Moreover it is more reasonable to believe from what does appear that the value of the Auburn intangibles were given due effect than that they were not.

Affirmed.

L. HAND, Circuit Judge, concurs in separate opinion.

L. HAND, Circuit Judge (concurring).

I think that it is too plain for us to disregard it, that the Tax Court's appraisal of

the "intangibles" was confined to those of the first four companies and did not include the Auburn Hame Company. It follows that no allowance whatever was made for the "intangibles" of that company. Nevertheless, I concur, because the record contains no evidence from which any value could have been set for its "intangibles," except the fact that some shares of stock were issued for them. That was not enough, and the taxpayer did not prove its case.