James A. Drinko and Jean D. Drinko v. Commissioner.
Drinko v. Commissioner
Docket No. 5215-63.
United States Tax Court
T.C. Memo 1967-115; 1967 Tax Ct. Memo LEXIS 144; 26 T.C.M. (CCH) 532; T.C.M. (RIA) 67115; May 23, 1967
*144 Held: Petitioners are not entitled to a deduction for subsistence expenses; they were not "away from home in the pursuit of a trade or business" during the taxable year, within the purview of sec. 162(a)(2), I.R.C. 1954; held, further, respondent's determination of allowable depreciation deduction sustained for failure of proof. James A. Drinko, pro se, 1813 Virginia Beach Blvd., Virginia Beach, Va. John W. Tissue, for the respondent. HOYT
Memorandum Findings of Fact and Opinion HOYT, Judge: Respondent determined a deficiency in petitioners' income tax for the calendar year 1960 in the amount of $1,550.15. The issues for decision are: (1) Whether a subsistence allowance in the amount of $2,886.80 paid to James A. Drinko by his employer and included in income should be offset by a deduction in the same amount claimed for expenses incurred in connection with employment and (2) Whether a depreciation deduction claimed in the amount of $4,000 with respect to rental properties should be allowed to an extent greater than $1,241.65, the amount allowed by respondent in his determination. Findings of Fact Some of the facts have been stipulated and are found *146 accordingly. A recital of the facts necessary to an understanding of the issues and our conclusions will follow. Petitioners herein are James A. Drinko and Jean D. Drinko, husband and wife, who resided at Virginia Beach, Virginia, at the time of filing their petition with us and at the time of trial. They filed a joint Federal income tax return for the calendar year 1960 with the district director of internal revenue at Parkersburg, West Virginia, showing their home address as 112 Second Street, St. Marys, West Virginia. Petitioners have been married since 1952 and during 1960 they had five dependent children, all of whom were listed in their return as dependents for exemption purposes. Before 1952 James lived with his parents at St. Marys, West Virginia, and attended Marietta College, Marietta, Ohio. After marriage he continued to use his parents' home at St. Marys as his permanent address and from time to time he stayed there on visits, between jobs, or when temporarily unemployed. For approximately nine years prior to 1960 James was employed by various consulting engineering firms and he was assigned to do engineering work at various projects for different corporations. This *147 required him to move about from place to place. James was not a union member and obtained employment and assignments through his own personal efforts and contacts. He continued to use his parents' home in West Virginia as his own address and his point of contact for employers and prospective employers. During the 10-year period, through 1960, James was idle awaiting an assignment for only a total period of about eight months. He was not idle at all in 1960, and his previous total idle time was made up of an unknown number of days for varying lengths of time. In 1958 petitioners spent approximately four months with James' parents in St. Marys at their home between his assignments. That was the last time they stayed there at the home place and they did not even visit West Virginia in 1959 or 1960. In 1959 James was employed at a project in California. He had never worked or lived in Derby, Colorado, but he had previously known the head of R and D Consultants, Inc., with headquarters in Derby. Through this contact he obtained a new assignment to a project known as the Sperry Microwave at Clearwater, Florida. His California job terminated in December 1959 and he was directed by R and *148 D Consultants to report to the Sperry project at Clearwater. He did not go to Derby nor did he go to West Virginia but proceeded directly with his family to Florida. When James took the job and accepted this assignment he did not know how long he would be required or expected to remain at Clearwater. Because of his knowledge about other similar projects in Florida that had lasted for a period of six months, James thought that he would probably only be at Clearwater for about that length of time. However, there was no time fixed or set for his stay at Clearwater and he was subject to reassignment by R and D either to the home office or elsewhere. The Sperry job lasted longer than James had anticipated. He remained there on that project from December 22, 1959 to January 13, 1961, a period of almost 13 months, until the project was completed. James then decided to discontinue this type of work for personal reasons and did not seek further assignments by R and D Consultants although he could have done so. The petitioners and their family moved to Virginia Beach, Virginia, some time in 1961 after the Sperry project was finished. They had purchased a home there in May of 1960, and in *149 1961 James accepted employment as a high school teacher in that area. Some time in 1960, James sent his sister, Donna Drinko, to live in his Virginia Beach property and look after it until the Clearwater job was concluded. Petitioners paid all of her expenses and in James' words "* * * She was charged as a deduction for that year [1960] on our form as will be noted." In their 1960 income tax return petitioners claimed depreciation on the Virginia Beach (Oceana) property for eight months and an exemption for Donna as a dependent living in their home for eight plus months. Some time before his assignment to the Clearwater project in December of 1959, James had purchased a large house trailer. It was in storage at Milwaukee, Wisconsin, where it had been for about 18 months. Prior to reporting to the Sperry project James arranged to have the trailer towed to Clearwater so that he and his family could occupy it while he was assigned to the Clearwater job. The trailer did not reach Clearwater until the end of January 1960 and in the interim petitioners and their children stayed at a motel. Thereafter they lived at the Holiday Trailer Ranch in this trailer for the remaining 11 months *150 of 1960. The trailer was an 8-foot wide, 2-bedroom luxury model that cost $7,000 when new. Petitioners paid $500 to have it towed from Milwaukee to Clearwater. During the 10-year period that James was employed on various engineering projects around the country he at no time worked in West Virginia, nor did petitioners ever own or rent any residential property in West Virginia. Petitioners and their children during the period 1952-1960 lived together at the various project locations in rented quarters or their house trailer. At some time during the period 1952-1958 James helped his parents add additional basement living and storage space to their home and he kept some of his personal effects stored in their attic. He also sent his parents $20 per month for a period of years. Later on and in 1960 he had increased these monthly payments to $25. James had an understanding that his parents would take care of forwarding his mail if he continued to use their home address in his correspondence. Respondent concedes on brief that these payments were also made when James was working to permit him to take his family to stay with his parents during periods of unemployment without feeling that *151 he was imposing a burden on them. James' father was not in very good health and worked only sporadically. From time to time during the years until 1958 James purchased clothing, automobiles and other items in West Virginia, but he was not there after 1958 at all. He was registered there at St. Marys for the draft and for voting purposes as well and filed income tax returns from there. The evidence is not clear whether or not this continued through 1960, but as already indicated petitioners' Federal income tax return showed their home address as St. Marys, West Virginia. James had an understanding that R and D Consultants would pay him a "per diem" of $8 while he was working on a project for them. During 1960 he received wages of $18,156 and a "per diem" subsistence allowance of $2,886.80 from R and D which he reported on his income tax return. He deducted living expenses equal to the allowance, reporting it as follows: Subsistence allowance (see Form 1099)
Expenses received
$2,886.80
Expenses incurred
2,886.80
0
361 days on temporary assignment away from home. No evidence whatever as to James' living expenses at Clearwater in 1960 was offered or introduced *152 at trial. During 1960 James' work on the Clearwater project was supervised by Sperry which had a contract of unknown terms with R and D Consultants, James' employer. James did not know when that contract would terminate, his dealings as to assignment being with R and D. He considered purchasing a permanent home in Florida so as to settle down there and as early as February of 1960 he had purchased a residential property at Orlando (Longwood) where R and D had set up a field office, with the prospect that when he finished at Clearwater he would go to work there. Later on his plans changed and he decided to establish permanent residence at Virginia Beach when the Sperry project was concluded. As indicated previously he acquired a residence at Virginia Beach (Oceana) in May 1960 and connected to this was a rental property, described as a brick garage apartment. He also purchased two duplexes, the entire complex consisting of four acres, a home and five rental units. The parties have stipulated that in 1960 petitioners acquired Florida and Virginia properties for investment purposes but that at no time did they reside in any of these. They have also stipulated that the Florida property *153 consisting of a frame house and building was purchased on February 1, 1960, at a cost of $10,000, exclusive of land, $9,000 representing cost of the house and $1,000 cost of the building, and that the Virginia investment property, consisting of a brick garage apartment and two concrete block duplexes was purchased on May 1, 1960, at a cost of $27,500, exclusive of land, $7,500 for the brick garage apartment and $10,000 for each of the two duplexes. The Florida house and building were 15 to 20 years old when petitioners bought them; the building was used as a dog kennel. Petitioners hoped to use both buildings for the 12-year period for which they were financed. As to the Virginia property, the brick apartment is attached to the house and the block duplexes are small flat-roofed apartments, poorly constructed, with cracked walls and sinking tile floors. In James' opinion they had an 18-year useful life. In their return for 1960 petitioners elected to claim 20 percent first year depreciation and claimed a deduction of $1,000 for depreciation on the Florida buildings and $3,000 on the Virginia buildings, using an estimated useful life of 11 years for the Florida buildings and the brick *154 apartment at Virginia Beach and 16 years for the block duplexes. In his deficiency notice respondent made the following adjustments and explanations: Adjustments to Income
Taxable income reported on return
$ 8,412.00
Additional income and unallowable deductions: (a) Reimbursed expenses
$2,886.80
(b) Depreciation decreased
2,758.35
5,645.15
Taxable income corrected
$14,057.15
Explanations of Adjustments (a) Reimbursed expenses in the amount of $2,886.80 have been included in income and the deduction in the amount of $2,886.80 claimed for expenses incurred in connection with your employment has been disallowed, since it has not been established that you were "away from home" as that term is defined in the Internal Revenue Code of 1954. (b) Depreciation claimed on your return in the amount of $4,000.00 has been disallowed, since "20% first year depreciation" as provided for in section 179 of the Internal Revenue Code of 1954 applies only to tangible personal property (section 179(d)(1)) and, therefore, does not include real property. However, depreciation is allowable on real property used in a trade or business (section *155 167(a)(1)) and depreciation on your rental property has been allowed in the amount of $1,241.65, based on the straight line method, computed as follows: Property
Date Rec'd
Cost
Rate
Depreciation
Wood frame house
2-1-60
$ 9,000.00
5% (11/12)
$ 412.50
Wood frame house
2-1-60
1,000.00
5% (11/12)
45.83
Brick apartment
5-1-60
7,500.00
5% ( 8/12)
250.00
Block duplex
5-1-60
10,000.00
4%
266.66
Block duplex
5-1-60
10,000.00
4%
266.66
Total depreciation allowable
$1,241.65
Claimed in return
4,000.00
Amount of decrease
$2,758.35
At trial and on brief petitioners concede that there is no dispute with respect to the depreciation issue and the computation of the depreciation deduction allowable except as to the useful life of the various buildings to be used. They concede that the useful life used for each in their return was in error and contend instead that the Florida buildings had a useful life of 12 years and the Virginia buildings had a useful life of 18 years. James had not been to West Virginia, his alleged home, for more than one year before the tax year in question. His employment took him all around *156 the country for many years and in 1960 he spent in excess of 360 days in Clearwater, Florida; this was the only place he was employed in 1960 and it was his main post of duty and principal place of business in 1960. Opinion The petitioners contend that respondent has erroneously disallowed a deduction for subsistence expenses, that their home was at St. Marys, West Virginia, during 1960, not Clearwater, Florida, and that therefore they should be allowed to offset away from home expenses against subsistence per diem received. They also contend that the rates of depreciation used by respondent in connection with the depreciation deduction disallowed in part were arbitrary and not realistic in that the income-producing projects involved should have shorter useful lives. Respondent urges that James was not away from home during 1960, that he was assigned by his employer to work at Clearwater, Florida, that year and that under section 162(a)(2) of the Internal Revenue Code of 1954[1] the claimed deduction is not allowable because living expenses in Florida for petitioner and his family were personal. Respondent also contends that even if it is assumed, arguendo, *157 that petitioners' home was in West Virginia in 1960, James was not away from that home temporarily but at least indefinitely so that his living expenses in Florida were personal not ordinary and necessary business expenses. As to the depreciation issue respondent avers that petitioners have failed to show any error in the determination of respondent and that because of petitioners' failure to meet their burden of proof the determination allowing only part of the depreciation claimed should be sustained. The parties are in agreement and have stipulated *158 that James received a living expense allowance of $2,886.80 from his employer in 1960 which was duly reported by petitioners in their income tax return for that year. The sole issue as to this undisputed item of income is whether or not petitioners are entitled to deduct the same amount as away from home expenses that year as claimed in their return. This deduction was disallowed by respondent because it was not established that petitioners were away from home as that term is defined by the Code. We must uphold this determination. The record before us is absolutely silent as to what James' living or subsistence expenses at Clearwater were in 1960. We know only that the entire Drinko family lived in a motel for one month and in their house trailer at a trailer park for the following 11 months that year. Petitioners apparently take the view that James' $8 per day subsistence allowance was and could be used not only to support him but also to support the rest of the family and because the family consisted of seven members in 1960, it is obvious that they are entitled to deduct the entire allowance as an away from home expense. We cannot agree that this is the correct approach nor do *159 we subscribe to the view that the term "* * * traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business * * *" includes the purely personal expenses of having family members along on the journey. However, since the respondent has not challenged the amount claimed and since the parties have presented and argued this case solely on the question of whether James was "away from home" in 1960 in the tax sense, we limit our holding to that question. At the outset we note that the provisions of section 23(a)(1)(A) of the 1939 Code and of section 162(a)(2) of the 1954 Code as to traveling expense deductions are identical; we therefore can rely on interpretations and applications of the 1939 Code provision in construing and applying section 162(a)(2) here. In Commissioner v. Flowers, 326 U.S. 465 (1946), the Supreme Court established three conditions for allowing traveling expense deductions: (1) they must be reasonable and necessary; (2) they must be "away from home" and (3) they must be incurred in pursuit of business. All three conditions must be met before the deduction is allowed. We have *160 found that James went to work at Clearwater, Florida, in December of 1959 and that he worked there throughout 1960 in excess of 360 days that year. True he maintained his permanent mailing address at his parents' home in West Virginia, where he had formerly visited and stayed during periods of unemployment. He had voted, paid his taxes and bought clothes and cars there but he last visited West Virginia in 1958, when he spent several months in his parents' home awaiting a new job assignment. He also sent his parents from $20 to $25 per month but this was to help them out and insure a place for petitioners' family to visit not to maintain a home for them there. His wife and children were residing with him in 1959 in California and all during 1960 they were with him in Florida. Not only was Florida his place of business and employment all during 1960, but it was his home in every sense of the word that year. The only home he owned was a large luxury type house trailer, sometimes called a mobile home, which cost him $7,000 when he bought it several years before. He had this home moved to Florida at considerable expense and the family lived in it for 11 months of the year. On all of the *161 evidence of record we conclude and hold that James was not away from home in 1960 and cannot therefore deduct his living expenses at Clearwater, Florida. They were personal and nondeductible under section 162. Kenneth H. Hicks, 47 T.C. 71 (1966); Floyd Garlock, 34 T.C. 611 (1960); Wilson John Fisher, 23 T.C. 218 (1954), affd. 230 F. 2d 79 (C.A. 7, 1956); James R. Whitaker, 24 T.C. 750 (1955). See also Commissioner v. Stidger, 386 U.S. 287 (Mar. 20, 1967). Furthermore, even if we assume arguendo that petitioners' home and James' parents' home in West Virginia were one and the same, we agree with respondent that the evidence requires the conclusion that in 1960 James was not just temporarily away from that home. The evidence is convincing that his employment in Florida was indefinite or indeterminate when he left California and moved there with his family in December of 1959. This being the case, the away from home traveling expense deduction must be denied under the doctrine of Peurifoy v. Commissioner, 358 U.S. 59 (1958), affirming per curiam 254 F. 2d 483 (C.A. 4, 1957), reversing *162 27 T.C. 149 (1956); see also Darrell Spear Courtney, 32 T.C. 334 (1959). The respondent's determination disallowing the claimed living expense deduction is upheld. Petitioners' evidence as to the depreciation deduction issue is totally inadequate to overcome the presumption of correctness attaching to respondent's determination. The sole evidence adduced was James' testimony giving his rather vague and general opinion as to the useful life of the properties in question. James' expertise as to the useful lives of residential rental properties was not established. His testimony also indicates that his selection of and opinion as to a proper useful life to be applied in computing depreciation was guided, not by any factors properly considered but rather by the period of the purchase money financing. For example, James stated that he thought 12 years was the proper useful life for the Florida properties because he hoped they would be useable through the 12-year period that he "had the property financed for." He gave no testimony whatever as to the brick apartment in Virginia, age, structural condition or otherwise. He did describe the block duplexes as being *163 of flat-roof construction, small room units, "homemade" (not by a carpenter) with many defects and faults. However, we do not know anything else as to their age or other factors to be considered. At trial and on brief petitioners concede that the depreciation claimed on their 1960 return was improper and erroneous. They in effect urge that we determine useful lives of 12 years for the Florida buildings and the brick apartment and 18 years for the block duplexes instead of the 20 and 25 years determined by respondent for those respective properties. We note that in their return they selected and reported useful lives of 11 and 16 years. With such flimsy and unsatisfactory evidence which we consider but do not find convincing we uphold respondent's determination on this issue as well; his allowance of $1,241.65 for depreciation in 1960 was proper. Uncasville Mfg. Co. v. Commissioner, 55 F. 2d 893 (C.A. 2, 1932), affirming on this issue 19 B.T.A. 920 (1930), certiorari denied 296 U.S. 545 (1932). Decision will be entered for the respondent. Footnotes
1. All references hereinafter made to the Code shall refer to the Internal Revenue Code of 1954, as effective in 1960, unless otherwise specified. Sec. 162, I.R.C. 1954, provides in pertinent part as follows: SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including * * *
(2) traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; and * * *↩