## CONCORD CO. v. WILLCUTS et al.
### No. 11980.

Circuit Court of Appeals, Eighth Circuit.

Feb. 9, 1942.

Rehearing Denied March 7, 1942.

Donald F. Pratt, of Minneapolis, Minn. (Guesmer, Carson & MacGregor, of Minneapolis, Minn., on the brief), for appellant.

J. E. Garvey, Sp. Asst. to the Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., J. Louis Monarch and Gerald L. Wallace, Sp. Assts. to the Atty. Gen., and Victor E. Anderson, U. S. Atty., and Linus J. Hammond, Asst. U. S. Atty., both of St. Paul, Minn., on the brief), for appellees.

Before GARDNER, SANBORN, and WOODROUGH, Circuit Judges.

WOODROUGH, Circuit Judge.

In 1930 the plaintiff in this case was the owner of 30,000 shares of the common stock of Cream of Wheat Company which it had received through non-taxable exchange of 20 shares of its own stock for 20 shares of Cream of Wheat Company stock in 1922, the total 400 shares of stock originally issued by Cream of Wheat Company having been split up in 1929 through non-taxable transactions at the ratio of 1,500 new shares for each original share. 13,110 shares of the resulting 30,000 shares were sold by the plaintiff in 1930 for $484,545.10, and in computing its gain from the sale in its income tax return for the tax year it put the March 1, 1913, value of the stock sold at $345,000 and returned the difference of $139,545.00 as an item of taxable gain for gross income. On his audit of the return, the Commissioner of Internal Revenue found the March 1, 1913, value of the stock sold to be $136,663.-27, disclosing a gain from the sale of $347,-881.82, and resulting in deficiency in tax returned amounting, with interest, to $29,042.-34, which deficiency he accordingly assessed. The plaintiff paid the amount of the deficiency assessment under protest and brought this suit against the Collector to recover it back with interest. The Collector having died pendente lite, the executors of his estate and will were duly substituted as parties defendant.[1] The complaint set forth how the deficiency tax which the plaintiff paid in and which it sought to recover back had been arrived at by the government officials, and embodied in it the letter to the taxpayer describing the method and figures used. It was alleged that the true value of the 13,-110 shares of stock on March 1, 1913, was $25 per share instead of $10.424353 as determined by the Commissioner and that the Commissioner had overstated the gain from the sale by $208,336.13. The parties stipulated that the deficiency assessment was attributable to the Commissioner's determination that the March 1, 1913, value of the stock was $10.424353 per share or $136,-663.27 and as the answer was a general denial the plaintiff had the burden of proving that the March 1, 1913, value of the stock was greater than $136,663.27; the amount which it could recover in the action depend-ing upon the extent of the excess which it could prove.

On the jury trial the plaintiff recognized and assumed that burden of proof and stated to the jury in its opening statement that the government had claimed the value of each of the shares to be $10.42 and a certain decimal on March 1, 1913, and that the deficiency had been assessed and collected on that basis but that it was the contention of the taxpayer that the stock was worth at least $25 per share on that date. At the conclusion of the voluminous testimony, in which the Commissioner's valuation and his method of arriving at it had again been shown to the jury by plaintiff, the court told the jury in the instructions what the Commissioner's valuation was, and stated, i. a.:

"In computing the value of Cream of Wheat stock as of March 1, 1913, the Commissioner determined that the 400 shares outstanding were of the value of $6,254,-212.70, which would be a value for each share of the 400 shares outstanding of $15,-636.53. The taxpayer contends that this valuation per share, to-wit, $15,636.53, is too low."

"You will remember that I have already informed you in this charge that the Commissioner placed a total valuation on the 400 shares of stock as of the date in question in the sum of $6,254,612.70. It is this sum which the plaintiff contends is erroneous, is wrong, that it is too low, and it seeks to establish in this case that the fair market value of the stock was an amount in excess, greater than the value determined by the Commissioner."

The jury was instructed that "the burden of proof rests upon the plaintiff to prove that the fair market value of this stock was an amount in excess of the Commissioner's value, and if the plaintiff has failed in sustaining this burden of proof it cannot recover any refund." There was further instruction to the effect that if the jury should determine that the plaintiff had established by the greater weight of the testimony that the value was over the figure of the Commissioner, it would then be for the jury to determine what the true value was.

In accord with its instructions as to the plaintiff's burden of proof the court sub-

---

[1] Lowe Bros. Co. v. United States, 304 U.S. 302, 305, 58 S.Ct. 896, 82 L.Ed. 1362; Patton v. Brady, 184 U.S. 608, 22 S.Ct. 493, 46 L.Ed. 713; see United States v. Kales, Dec. 8, 1941, 62 S.Ct. 214, 86 L.Ed. ——.

mitted the case to the jury upon interrogatories, with directory note:

1. Has the plaintiff established by a fair preponderance of the evidence that on March 1, 1913, the fair market value of the 400 shares of Cream of Wheat stock was an amount in excess of the value determined by the Commissioner? Note: If your answer to the above question is "no", then the following question may be disregarded:

2. What was the March 1, 1913, fair market value per share (before the 1500 to 1 split up) of the Cream of Wheat stock in question?

The plaintiff requested the court to submit only the one single question to the jury, "What was the March 1, 1913 fair market value per share (before the 1500 to 1 split up) of the Cream of Wheat stock in question?" and its exception to the court's refusal of the request was allowed.[2] The instructions given by the court were not excepted to by either of the parties.

The jury answered "no" to the first question submitted to them, and the court having entered judgment of dismissal in accord with the verdict, this appeal is taken to reverse the judgment.

### Opinion.

█ It is argued for the appellant here that something about the first question put to the jury conveyed to them some implication that the Commissioner's determination of value was presumptively correct. But there were no words in the question expressive of such an idea and the instructions of the court made it perfectly clear to the jury that there was no such presumption to be indulged by them and that the jury was required to make its finding upon the whole body of testimony before it.

█ It is also argued that the trial court committed error because the first question

submitted to and answered by the jury was related to the value of the whole block of 400 original shares of stock instead of to single share values. But this contention is also without merit. The plaintiff alleged in its complaint that "the sale profit-or-loss basis of any one of its 30,000 shares was 1/1500 of the March 1, 1913 value of one of the [original] 20 shares" and it based its claims exclusively upon its proof of total value, asserting the per share value solely as the result of mathematical computation. The issue was simplified for the jury by relating the interrogatory to the total values which were testified to by the witnesses, meticulously explained in the court's instructions, and debated by counsel, and there could be and was no prejudice to plaintiff in omitting to make mathematical reduction of the total values to per share values in the form of question submitted.

A further point for reversal argued at length for appellant is that the court erred in permitting the examination of the witness Frederic W. Clifford to be improperly extended to irrelevant matters, resulting in prejudice to plaintiff. The witness was not an officer or stockholder of the plaintiff and the only part of this contention made specific by appellant is that the cross examination tended to create the impression that the witness and the taxpayer were using family corporations in an attempt to evade taxes. No such contention was presented to the trial court by way of objection, motion to strike, request for instruction or otherwise, and it is not meritorious. The trial court of its own motion duly impressed upon the jury in its instructions "a taxpayer who feels that he is aggrieved by rulings of the government officials by reason of income tax assessment has a perfect right to bring an action in the courts of our land to test the ruling of such government official. You are to give the tax-

---

[2] The colloquy between court and counsel for plaintiff was:

"Mr. Pratt: The plaintiff objects to the submission of the two questions as proposed by the defendants, and I assume the objection is overruled?

"The Court: Well, so there is no misunderstanding, you are objecting to question number 1, are you not?

"Mr. Pratt: Yes, I should put it that way—that is correct. The plaintiff is objecting to the submission to the jury of question number 1 of the special interrogatories.

"The Court: And you have no objection to question number 2.

"Mr. Pratt: No.

"The Court: In other words, it is your theory that the case should be submitted to the jury solely on question number 2?

"Mr. Pratt: That is correct, Your Honor, and an exception noted.

"The Court: The objection may be noted, and the objection is overruled, and an exception allowed."

payer in this proceeding a fair and impartial trial." The witness showed intimate familiarity with plaintiff's affairs and contributed some support to the plaintiff's claim. It was shown through the cross examination that he had a personal interest in the case, which interest was not otherwise apparent. Nothing is found upon study of his entire examination to justify discussion of it or to sustain the point argued against any ruling of the trial court in respect to it.

▮ Appellant also contends that the trial court erred in receiving in evidence certain exhibits identified as "E" "D" "L" "N" "K" "M" "Q" and "R", and "the direct testimony relating thereto". The court ruled adversely to the plaintiff upon plaintiff's objections to this testimony and the contention has necessitated consideration of the entire record. On such consideration it appears that the qualified experts on value who testified for the plaintiff based their opinions as to the March 1, 1913. value of the stock in question upon the facts concerning the history, operations and financial set up of the company as they were stipulated and shown in evidence and upon their general knowledge and experience, without attempting comparison of such stocks or their values with others known to have been traded in at ascertained prices. Those testifying for the government considered the same facts concerning the Cream of Wheat Company but included studies of the financial set up of other companies, their stock issues and the actual trading in the stocks on the stock exchanges, among the elements upon which they based their opinions. They made comparisons between the stocks in question and certain listed stocks, both in respect to the matter of tangible assets behind the respective stocks [3] and as to the matter of net income,[4] and the figures compiled for such

---

[3] For example, as to Exhibit "M" the expert witness Grimes testified:

"This chart shows that for every dollar of tangible assets that one obtained— if one bought the stock of the Cream of Wheat Company, all of it, for $15,000,-000.00, he would only get $664,000.00 of tangible assets, so he would be paying $22.22 for every dollar of tangible assets of this company, if he bought the total stocks for $15,000,000.00. If he bought it at the $6,250,000.00, in round figures, that the Commissioner allowed for the total stock, he would be paying $9.26 for every dollar of tangible assets back of that stock. For the 15 companies [analyzed by the government experts] with the highest amount of goodwill value, you would be paying less than $3.00 for every dollar of tangible assets back of the stock, and the highest amount which you would be paying for the stock of any of these companies would be in the neighborhood of five times, that is, five dollars for each dollar of tangibles. If you bought the Shredded Wheat Company stock you would be paying $1.60 for every dollar of tangibles. If you bought the Quaker Oats Company stock you would maybe figure less than this, because this includes only the working capital. It includes nothing for plant and equipment. If I recollect the figures correctly, it is agreed now that it may be used at $2.52. You would be paying two and one-half times—$2.50—for every dollar of tangible assets back of the stock. * * * "

[4] For example as to Exhibit "R", entitled "Industrial Earning Power of $600,-000 a year, March 1, 1913, calculated value, based on stock prices of that date and 1912 earnings", the following is taken from the examination of the expert witness Merriman:

"Mr. Garvey: The defendant offers in evidence Defendant's Exhibit R.

"Mr. Pratt: It is objected to on the ground that the companies included are not comparable.

"The Court: I am not sure that I quite understand, Mr. Garvey, just what it is. Is that the capitalization on the basis of earnings of $600,000.00 a year? I don't quite understand what it is.

"The Witness: The Cream of Wheat Company was earning approximately $600,000.00 a year. Now putting ourselves in the frame of mind of a buyer, how much would he have to pay to buy $600,000.00 of earnings in other businesses, other businesses of companies that were strong as to financial structure, that were making progress in their earnings and that were paying respectable dividends on their stocks. This is merely a graphic illustration to show what he would get for his $600,000.00 of earning power. That is what one gets if one buys an industrial business. The product of the Cream of Wheat Company to the investor and the product of the United States Steel and the product of every other security is always the same to the investor. It is dollars.

"The Court: You mean what he would

studies were reflected in the exhibits to which the plaintiff objected. The opposed experts disagreed particularly as to the rate or percentage which should be used in applying to the Cream of Wheat Company stock the method of valuation by capitalization of net earnings. Those for the taxpayer approved the rate of 4 per cent and those opposed approved about ten per cent, the Commissioner having used ten per cent in making the deficiency assessment. After ascertaining carefully what each exhibit purported to show and excluding some which did not appear to the court to be probative, the court received in evidence those that are here in question and instructed the jury in regard to them as follows:

"The Government has introduced certain charts which reflect the net earnings of the three breakfast food companies,—another chart represents percentages of the rate of earnings to the investment in which Cream of Wheat is compared with various other well-known companies that were available to the investor on the basic date in question. Other charts purport to represent a comparison of the relationship between the earnings and stock value, and dollars of stock value per dollar of tangible assets, comparing Cream of Wheat Company with other companies whose stocks were available to the investor. There are figures in these charts which purport to represent the interest and dividend yields and margins of safety, comparing Cream of Wheat Company and other stocks on the market, and the amount of money it would take for the investor to buy stocks of other companies which were earning $600,000 per year. I will not take time to comment or discuss these various exhibits. They all purport to have a bearing upon the market value of Cream of Wheat stock, and whether or not an investor, who was ready, willing and able to buy, in light of all of these facts and circumstances, would pay the sum for the stock as valued by the taxpayer in this proceeding, or would have paid the Commissioner's value, or a value less than that fixed by the Commissioner. You have heard the comments of plaintiff's witnesses as to the correctness of these charts and their value in depicting that which they assume to teach. It is the contention of the plaintiff that the Quaker Oats and Shredded Wheat companies are not comparable to the Cream of Wheat Company, and that the other companies listed on the various charts were so different in structure and the products manufactured and distributed, that they bear no relationship in any way to the reasonable and fair market value of the Cream of Wheat stock.

＊　　＊　　＊　　＊　　＊

"If, on or about March 1, 1913, the stock of the Cream of Wheat Company had been freely dealt in on a free and open market, the market price so established would probably be the best evidence of the price at which a seller, willing to sell at a fair price, and a buyer willing to buy at a fair price, each having reasonable knowledge of the facts and neither under compulsion, would trade. However, as I have stated before, this stock was not traded upon the market. It was not quoted, and therefore, in determining the fair market value of this stock, you should take into consideration the amount of tangible assets, the yearly increase or decrease in the volume of sales during the period in question, the yearly increase or decrease in net earnings, the yearly dividend paid for the period prior to March 1, 1913, the profits per case during this period, the condition of the market, the opinions of these various experts, and other comparable investments, if any, that may have been open to an investor, and from all these facts and circumstances, together with any other fact or circumstance that may have a bearing on it, determine the fair and reasonable market value of this stock on the date in question."

"If Cream of Wheat is fairly comparable to Shredded Wheat and Quaker Oats Company, then the price at which these stocks were sold in a free and open market is evidence that you should consider in determining the price that Cream of Wheat stock would have commanded if that stock had been similarly listed and sold. Whether or not these companies, that is, the Quaker Oats Company and the Shredded Wheat Company, are comparable is a question of fact that I must leave to you in light of all the testimony. If they are not comparable then of course you will disregard any comparison. ＊　＊　＊"

---

have to pay for a net earning capacity or potential capacity to earn $600,000.- 00 a year?

"The Witness: Yes. I have shown for instance the amount that would have to be invested in this first company, which is the American Book, that would produce $600,000.00 a year.

"The Court: I think I understand it now. It may be received."

There is elaborate argument for appellant to the effect that on the trial of the issue of value the court should have treated the Cream of Wheat stock as being incomparable and should have excluded all the comparative studies which the government experts believed to be illuminative. We conclude that none of the cases cited tends to support such contention and that the trial court's rulings upon the offers of the exhibits complained of were proper and that its instructions concerning the consideration which the jury should give to them stated the applicable law clearly and accurately.

The appellant especially complains of the form of the verdict which was rendered against it. Its position is that the verdict was a special verdict and that its form offends against rules which have been established in states where the practice of taking special verdicts prevails. We have noted that the substance of the first question which the court put to the jury was simply whether or not the plaintiff had sustained the burden of proof on its part to be sustained in order to justify any recovery by it as such burden of proof had been clearly and properly defined and explained by the court. There was and is no dispute as to what the plaintiff's burden of proof was and no exception was taken to the court's definition and explanation of it to the jury. As juries in suits for unliquidated amounts are traditionally instructed on the plaintiff's burden of proof and directed to determine whether or not it has been sustained before going into the question of the amount of recovery the appellant does not and could not point out how any possible prejudice resulted to it from having the jury's determination on that matter declared in the form of an answer to a question. We are satisfied that there was nothing prejudicial to plaintiff in the form of the question, and that affirmance, so far as this point is concerned, would be compelled by 28 U.S.C.A. § 391, which prohibits reversals for technical errors which do not affect the substantial rights of the parties.

We have not failed to consider the appellant's presentation that this case is a pioneer special verdict case requiring comparisons between Rule 49(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, and the body of law developed by adjudications in several states where the question of taking special verdicts prevails, and the text writers. Our rule authorizes the trial court to submit to the jury written questions susceptible of brief answer, requiring only that the court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its finding, and certainly there was no failure on the trial court's part to comply with the requirement as to explanation and instruction concerning the matter which it submitted to the jury in this case. We have found nothing in the rule or in appellant's citations from state cases or law-writers which appears to cast any doubt upon the propriety of the court's submission of the written question in this case. The objections that it let the jury know what effect their answer would have[5], and that it eliminated the mathematical computations necessary to reduce total shares values to single share values have been considered. A third contention that submission of the question constituted reversible error because the court thereby submitted the general issue of the plaintiff's right to recover anything appears to be equally without support in any citation given us. It is not necessary to say that there would have been reversible error if the court had submitted only the one question "What was the value?" Such a question, however, would appear more appropriate to a condemnation proceeding. Here the question submitted and answered was exactly in accord with the issue defined by the pleadings and evidence.

Study of the entire record and all of the points argued convinces that the taxpayer was accorded a jury trial that was fair in all respects and there was no error.

Affirmed.

---

[5] Sicard v. Albenberg Co., 136 Wis. 622, 118 N.W. 179.