## GLOYD v. COMMISSIONER OF INTERNAL REVENUE.

No. 9226.

Circuit Court of Appeals, Eighth Circuit.

March 2, 1933.

Rehearing Denied April 12, 1933.

George E. H. Goodner, of Washington, D. C., for petitioner.

Helen R. Carloss, Sp. Asst. to Atty. Gen. (G. A. Youngquist, Asst. Atty. Gen., Sewall Key, Sp. Asst. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and W. Frank Gibbs, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for respondent.

Before STONE and KENYON, Circuit Judges, and CANT, District Judge.

KENYON, Circuit Judge.

Certain of petitioner's income taxes for the years 1924, 1925, and 1926 are involved in a petition for review by this court of a decision of the United States Board of Tax Appeals. The facts are these: Petitioner, a resident of Kansas City, Mo., was prior to 1918 a member of a partnership (consisting of himself and a brother, A. M. Gloyd) engaged in the lumber business, and later in the real estate business. This partnership owned a two-thirds interest in an office building in Kansas City known as the Gloyd building, and also owned a warehouse known as the Ward building. In 1918 A. M. Gloyd died, and petitioner wound up the affairs of the partnership under court direction. These two buildings and the land upon which they were situated were sold on October 30, 1920, at public auction to the Gloyd Realty Company for $700,000. This company was a corporation composed principally of petitioner and some relatives. It was organized less than a month prior to the sale for the purpose of bidding up or buying in the partnership interest in these buildings. Petitioner advanced three-fourths and S. M. Gloyd one-fourth of the $700,000. This sale was contested by the widow of the deceased partner, but it was finally approved by the Supreme Court of Missouri in May, 1922. Petitioner, who had managed the properties as surviving partner pending final approval of the sale, deeded them after such approval to the Gloyd Realty Company. This company immediately dissolved and made distribution of its assets to its stockholders on May 22, 1922. Petitioner in this way obtained an undivided three-fourths interest in the Ward building and a one-half interest in the Gloyd building, which he held through the years 1924, 1925, and 1926.

Petitioner sought in his computation of taxable income for these years a deduction for depreciation annually on these buildings. The Commissioner of Internal Revenue allowed annual depreciation on the two buildings at the rate of 2½ per cent. on a valuation of $475,000. Before the Board of Tax Appeals, as shown by its opinion, both parties agreed that for the years in question a reasonable allowance for exhaustion, wear and tear, and obsolescence of petitioner's

property in these two buildings under the Revenue Act of 1924, c. 234, §§ 204 and 214, 43 Stat. 253, and the Revenue Act of 1926, c. 27, §§ 204, 214, 44 Stat. 9 (26 US CA §§ 935, 955 and notes) should be measured at the rate of 2½ per cent. There is no dispute as to that. The dispute is as to the proper basis for the application of the percentage rate. Petitioner claimed that the deduction on account of depreciation should be on a basis of a valuation of $350,000 for the Gloyd building, and $850,000 for the Ward building as of May 22, 1922, the date he acquired his interest in these buildings. The Board held the basic date of valuation for depreciation purposes was May 22, 1922, and this holding is accepted by both parties hereto as correct. The Board held that the evidence supported a valuation as to the Gloyd building of $350,000. The controversy as to this building therefore passes out of the picture. As to the Ward building, the Board found the evidence supported a valuation of $400,000 (exclusive of land) on May 22, 1922, and that petitioner was entitled to an annual depreciation reduction of 2½ per cent. for the years in question on his three-fourths interest therein.

■ Petitioner claims the Board erred in this finding, and that it should have found a value of $850,000. This question is one of fact, and the Board's finding thereon will be sustained if there is substantial evidence to support it. Denver Live Stock Commission Co. v. Commissioner of Internal Revenue (C. C. A. 8) 29 F.(2d) 543; Feeders' Supply Co. v. Commissioner of Internal Revenue (C. C. A. 8) 31 F.(2d) 274; Burkett v. Commissioner of Internal Revenue (C. C. A. 8) 31 F.(2d) 667; Franciscus Realty Co. v. Commissioner of Internal Revenue (C. C. A. 8) 39 F. (2d) 583; Williams v. Commissioner of Internal Revenue (C. C. A. 8) 44 F.(2d) 467; Russell et al. v. Commissioner of Internal Revenue, (C. C. A. 1) 45 F.(2d) 100; Refling v. Burnet, Commissioner of Internal Revenue (C. C. A. 8) 47 F.(2d) 859.

The Ward building was nine stories high, and contained approximately 576,000 square feet of store space. It was well located in Kansas City for a warehouse. When built, it was leased to Montgomery Ward & Co. for a period of twenty years from January 1, 1911, at an annual rental of $76,150.

Petitioner introduced six expert witnesses, experienced real estate agents and dealers in Kansas City, who testified to the value of the Ward building, some of them testifying as to such value exclusive of the grounds on which the buildings were located, and others including the grounds. Witnesses Waller, Guignon, McKecknie, Carey and Hagerman placed values on the building alone as of May 22, 1922, ranging from $812,000 to $1,531,200. Witness Halvorson placed a value on the Ward building and grounds of $1,000,000.

Respondent offered no testimony, but the Board of Tax Appeals evidently was not willing to accept at its full face value the evidence of the experts. In referring to them, its opinion says: "The evidence in respect of the Ward Building supports a value of $400,000. The witnesses who gave their opinions gave too little consideration to the fixed rentals and the duration and terms of the lease. For nine years the gross rent was fixed and the owner was required to bear substantial expenses. This would undoubtedly have held the value down in 1922 below the figure which might have been arrived at if the property were economically free. The evidence does not, and perhaps could not, supply a definite figure of value in these circumstances. We think that $400,000 is a fair market evaluation of the building. Petitioner's interest was $300,000 and his depreciation deduction for each year is therefore $7,500."

Petitioner claims that the Board of Tax Appeals was not authorized to disregard the undisputed testimony of the experts and substitute its own opinion; that there was no showing that the Board had special knowledge of the property involved, or special qualifications of an expert witness on real estate valuations; that the Board, in finding a valuation of $400,000, set up its own arbitrary evaluation, with no evidence whatever upon which to base it.

■ Of course, there must be substantial evidence to support the finding of the Board or it cannot stand, but we do not understand the law to be that the Board is compelled to accept the evidence of experts as to values of property. It is within its province to accept such evidence in toto, in part, or not at all. Its weight is with the trial Board, and its worth is for its sound judgment to determine. It is not required to surrender its judgment to the judgment of experts. It is the one to determine the facts—not the experts.

The correct rule is stated in Anchor Co., Inc., v. Commissioner of Internal Revenue (C. C. A., 4) 42 F.(2d) 99, 100: "It is said that the Board had before it no evidence, except the testimony of Franklin, as to market value on March 1, 1913; but this ignores the determination of the Commissioner, which

was before the Board, and, as shown above, was prima facie correct. And even if this were not true, we do not think that the Board, on the question of valuation, is to be held bound by the opinion of experts. Such evidence is competent, but it is not to be blindly followed. It should be weighed by the Board in the light of the other facts developed in the case and of the general knowledge and experience of the members, and is by them to be given only such weight as in the light thereof may seem to be just and reasonable."

Speaking of purely opinion evidence, the court in Am-Plus Storage Battery Co. v. Commissioner of Internal Revenue (C. C. A. 7) 35 F. (2d) 167, 169, says: "Such opinions, as is usual, were expressed with respect to the point upon which the board was required to pass. Such evidence, while competent and often exceedingly helpful, is not considered binding, in the sense that a tribunal before whom it is adduced is required to accept it, where same is contrary to the tribunal's own judgment of the result of the facts upon which the opinion evidence is based." See, also, W. S. Bogle & Co. v. Commissioner of Internal Revenue (C. C. A. 7) 26 F. (2d) 771; Head v. Hargrave, 105 U. S. 45, 26 L. Ed. 1028; The Conqueror, 166 U. S. 110, 17 S. Ct. 510, 41 L. Ed. 937.

Counsel for petitioner cites and relies on these cases, Collin v. Commissioner of Internal Revenue (C. C. A. 6) 32 F. (2d) 753; Boggs & Buhl v. Commissioner of Internal Revenue (C. C. A. 3) 34 F. (2d) 859; Bonwit Teller & Co. v. Commissioner of Internal Revenue (C. C. A. 2) 53 F. (2d) 381. We do not see that Collin v. Commissioner, supra, is at all in point. In Boggs & Buhl v. Commissioner, supra, the question of the value of good will was involved. The court recognizes the rule that a fact-finding tribunal may not arbitrarily disregard the testimony of unimpeached witnesses who testify as to facts, but may do so when they testify merely to opinions. It is to be noticed, however, that the court says, p. 861 of 34 F. (2d) : "Therefore it [Board of Tax Appeals] could not set aside or disregard all the positive and affirmative evidence as to the value of the good will, and base its conclusion upon conjecture." In Bonwit Teller & Co. v. Commissioner, supra, the taxpayer alone submitted evidence. One expert valuation witness testified as to the value of the lease in issue. The Board of Tax Appeals did not accept his estimate of value, and made a finding with no basis to support it. The court said, page 383 of 53 F. (2d) : "Counsel's argument rests solely upon the proposition that the Board is not bound to accept as conclusive the valuation placed upon the property by the taxpayer's expert witness. As a general proposition this statement of law is sound, and it would justify the Board in adopting some other valuation than that to which the expert testified, provided there were sufficient basis in the record for the value adopted. In the case at bar neither the Board's opinion nor counsel's argument suggests any basis for the value adopted."

In Pittsburgh Hotels Co. v. Commissioner of Internal Revenue (C. C. A. 3) 43 F. (2d) 345, 347, the court recognized the general principle of law that the Board of Tax Appeals was not bound to reach a conclusion in accordance with the views of experts in making its finding as to the depreciation of the William Penn Hotel in Pittsburgh, that, while the Board could reach a conclusion "in accordance with its own knowledge, experience, and judgment," it must in order so to do itself have knowledge of the subject-matter; that "it could not, therefore, arbitrarily disregard all the affirmative and positive testimony applicable to depreciation in this particular case." In Nichols v. Commissioner of Internal Revenue (C. C. A. 3) 44 F. (2d) 157, the question was as to the value of certain bonds. There was no evidence in the case as to value except the testimony of experts. The Board of Tax Appeals ignored this testimony, and affirmed the determination of the Commissioner of Internal Revenue, and the court found that its conclusions were not predicated upon any substantial evidence.

If there was no evidence in the case at bar except the evidence of the experts, the Board would not be compelled to accept the same, but, if it rejected such evidence, it could not upon mere conjecture set up an arbitrary value as to the Ward building unsupported by any substantial evidence. That, we think, is the fair deduction that might be drawn from the cases relied on by petitioner. There was evidence here both direct and expert bearing on the valuation of the Ward building. The Board had before it the finding of the Commissioner of a valuation of $475,000 for the two buildings. That was presumptively correct, and would stand, unless overcome by substantial evidence, and the burden was on petitioner to overthrow this valuation. Nichols v. Commissioner of Internal Revenue, supra; United States v. Anderson, 269 U. S. 422, 46 S. Ct. 131, 70 L. Ed. 347; United States v. Mitchell, 271 U. S. 9, 46 S. Ct. 418, 70 L. Ed. 799; Wickwire v. Reinecke, Collector of Internal Revenue, 275 U. S. 101, 48 S. Ct. 43, 72 L. Ed. 184. The Board accepted the contention of petitioner

as to a valuation of the Gloyd building of $350,000. What evidence did it have before it outside that of the experts upon which it could form an independent judgment as to a proper and fair valuation of the Ward building? Several matters in evidence bear on this question. The Board took into consideration the lease to Montgomery Ward & Co., its duration, and terms. This lease had nine years to run when the property was acquired by petitioner, and the testimony shows that it could have been leased for a much higher rental in 1922 than it was leased for in 1909. One witness testified that rents were 40 to 50 per cent. higher in 1922 than in 1909. The Board concluded that these facts would decrease the fair market value of the property in 1922, which fact the expert witnesses had not taken into consideration. There was also before the Board the fact that the Gloyd Realty Company had purchased both buildings and the ground on which they stood at public auction in 1920 for $700,000. Ordinarily an amount received at a public auction would not be at all satisfactory evidence of value. However, the situation here is different from an ordinary sale, as this one was contested by the widow of the deceased partner, and the sale was finally approved by the Supreme Court of Missouri in May, 1922. It would seem that the Supreme Court of Missouri would not have approved the same if the value of the properties was substantially in excess of $700,000. The Gloyd Realty Company, which paid the $700,000 for the buildings with the land, had been organized for the express purpose of purchasing these properties or bidding up the price so that they would bring what they were worth. The finding of the Board of a valuation of $750,000 for the two buildings exclusive of the land on which they were situated gives a value to the two buildings alone of $50,000 more than the buildings, including the land sold for in 1920. The witness Halvorson testifies "that there wasn't a great deal of difference in the value of the Ward property between October, 1920, and May, 1922." This witness also testified as to the sale of an entire one-half block of ground across the alley from the Ward property to the Power & Light Company about the year 1921 for $3.10 per square foot, and the experts agreed that a similar valuation is applicable to the land upon which the Ward building is situated. The Ward building covered 61,280 square feet, and at the same valuation the land upon which it was situated would be worth approximately $190,000. Adding that to the Board's valuation of the two buildings would give a

total value of $940,000, exclusive of the value of the land under the Gloyd building, which would be a very large increase over the values found by the Commissioner. It seems to us that, while the evidence is meager, there was some substantial and positive evidence upon which the Board could form an independent judgment as to the fair market value of the Ward building on May 22, 1922. It must be conceded that there is no evidence direct or expert that the value of the Ward building was exactly as found by the Board. Value is a very indefinite thing and difficult, if not impossible, of actual and specific determination. The Board, evidently disregarding the valuation of the Commissioner as too low, and the valuation of the experts as too high, reached its own conclusion, as a jury is compelled to do, by the exercise of its own judgment based on the facts and circumstances before it and the proper inferences to be drawn therefrom. It is not correct to say that there was no evidence in the record except the evidence of the experts. We have pointed out direct evidence fairly bearing on the question of value.

The late Judge CANT sat in this case and attended the conference thereon, but did not fully concur in the conclusion herein announced.

The decision of the Board of Tax Appeals is affirmed.