## ROGERS v. HELVERING, Commissioner.

### TUTHILL v. SAME.

### THRALL v. SAME.

#### Nos. 4–6.

Circuit Court of Appeals, Second Circuit.

Nov. 6, 1939.

Hugh Satterlee, of Washington, D. C., I. Herman Sher, of New York City (Satterlee & Green, of New York City, of counsel), for petitioners.

James W. Morris, Asst. Atty. Gen., and Sewall Key and Joseph M. Jones, Sp. Assts. to Atty. Gen., for respondent.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

PER CURIAM.

This appeal presents only one question, and that, one of fact: did the Board correctly appraise at $344 the "basis" on Sept. 1, 1929, of certain shares of stock, sold by the taxpayers in 1925? The evidence took a wide range, including on the one hand, much lower estimates put upon the shares by the taxpayers themselves for estate tax purposes, the sale-prices of small blocks, and brokers' quotations. On the other hand were a valuation of $465 as of March 1, 1913, found by the Commissioner himself, a number of elaborate calculations of experts, based upon the company's books and upon independent appraisals, and the fact that the shares, after being multiplied three-fold, were sold in 1925 for $500. If it were our duty, instead of the Board's, to appraise the shares, perhaps we should have made a larger allowance; but concededly it is not, we are confined to inquiring whether there was substantial support for the Board's finding. Phillips v. Commissioner, 283 U.S. 589, 600, 51 S.Ct. 608, 75 L.Ed. 1289; Helvering v. Rankin, 295 U.S. 123, 131, 55 S.Ct. 732, 79 L.Ed. 1343; Helvering v. Tex-Penn Oil Co., 300 U.S. 481, 490, 57 S. Ct. 569, 81 L.Ed. 755. The book value of the net tangible assets as of September 1, 1919, was in the neighborhood of $5,500,-000, ignoring a "write-up" of $2,500,000, made by professional appraisers in August, 1919, by which the Board was certainly not bound. The book value of the good-will was about $300,000, so that the shares had a book value of about $423. That is one approach. Another is to use one of the accredited formulas, based upon earnings, in order to appraise good-will. For example, one might select six per cent for the proper return on net tangibles, as the taxpayers do in their brief. In that case the average income for the five years before Sept. 1, 1919—about $485,000—would leave the sum of $155,000, as the income from good-will. This, capitalized at ten per cent, gives a total of about $7,000,000 of assets, and a value for the shares of something like $546. If, on the other hand, one takes nine per cent for the income on tangibles, nothing is left for good-will. Such computations are no doubt useful, but they are certainly not compelling. At best they are the opinions of experts, which the Board was not obliged to accept. Dayton P. & L. Co. v. Public Utilities Comm., 292 U.S. 290, 292, 54 S.Ct. 647, 78 L.Ed. 1267; Uncasville Mfg. Co. v. Commis-

sioner, 2 Cir., 55 F.2d 893, 897. Moreover, even if we had an absolutely reliable appraisal of the value of the assets, which we have not, although it would be a factor in appraising the shares (Ray Consol. Copper Co. v. United States, 268 U.S. 373, 377, 45 S.Ct. 526, 69 L.Ed. 1003), it would not be final. Indeed, the value of corporate shares is probably in the end determined more by what income they will fetch than by any other single consideration.

■ All this is well understood, and for this reason the price at which shares are sold is ordinarily the best test of their value. It is quite true that, even in wide markets where there are many buyers and sellers, these often do not know the more important facts about the company, and their consensus of opinion is not necessarily a proper measure of value, if by that be meant a truly informed judgment; nevertheless, sales are usually the most reliable evidence, and in any case they should weigh heavily. We cannot therefore say that, in the case at bar, the Board were bound to prefer the calculations of experts, drawn from the books, to sales even of such small blocks as forty shares or less; or to quotations of brokers who dealt in the shares. Robertson v. Routzahn, 6 Cir., 75 F.2d 537, 539. The Board was also free to consider those values which the taxpayers themselves put upon the shares for use in assessing estate taxes. Williams v. Commissioner, 8 Cir., 44 F.2d 467. These either were genuine estimates, or they were fraudulent; the taxpayers do not assert the second.

■ From such conflicting factors no conclusion could emerge whose truth was so indubitable that the appraising tribunal had no alternative but to accept it. Even though the value set seemed to us less than what we should have fixed ourselves, we should have no such certainty in our own appraisal as would permit us to impose it. The orders in the cases of Rogers and Thrall will therefore be affirmed, and so too would be that in Tuthill's case, except that there was a mistake in failing to tax him, as upon "capital gains", for the profit on the sale of such shares as he had acquired by means of "rights", declared upon shares held for over two years. Macy v. Helvering, 2 Cir., 82 F.2d 183. Tuthill argues that the privilege extends to the whole profits; the Commissioner, that it is limited to that proportion which is represented by the value of the rights themselves. The point has not been fully argued before us and was not considered by the Board; we will not therefore decide it now, but remand the cause.

Order in Rogers v. Helvering affirmed.

Order in Thrall v. Helvering affirmed.

Order in Tuthill v. Helvering reversed, and cause remanded.