**O'MALLEY, Collector of Internal Revenue, v. AMES.**

No. 14304.

United States Court of Appeals
Eighth Circuit.

June 16, 1952.

Melva M. Graney, Special Asst. to the Atty. Gen. (Ellis N. Slack, Acting Asst. Atty. Gen., A. F. Prescott, Special Asst. to the Atty. Gen. and Joseph T. Votava, U. S. Atty., Omaha, Neb., on the brief), for appellant.

C. Petrus Peterson, Lincoln, Neb. (James N. Ackerman, Lincoln, Neb., on the brief) for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and RIDDICK, Circuit Judges.

GARDNER, Chief Judge.

This appeal is from a judgment in favor of appellee, the taxpayer, against appellant as Collector of Internal Revenue in an

action to recover the amount of a deficiency assessment levied by the Collector of Internal Revenue against appellee and paid by him under protest. We shall refer to the parties as they were designated in the trial court.

In 1943 plaintiff exchanged 180 shares of stock in Bankers Life Insurance Company of Nebraska for 18,000 trust certificates of a conceded value of $540,000. For each share of Bankers Life plaintiff received property worth $3,000. His stock in Bankers Life was acquired by him prior to March 1, 1913. For the year 1941 plaintiff filed an income tax return showing taxes due in the sum of $11,866.55, which he paid. The Commissioner, however, increased the income reported and assessed a deficiency against him which he paid. The increase in income resulted from Commissioner's action in reducing plaintiff's basis on Bankers Life stock realized in 1941 from $1373 a share, as reported by him, to $150 a share, and by reducing the basis of the trust certificates sold in 1941 from $30 a unit to $27 a unit. Having paid under protest the additional tax resulting from Commissioner's deficiency assessment plaintiff brought this action to recover the amount so paid by him on the ground that the fair market value of his 180 shares of Bankers Life stock on March 1, 1913 was $540,000, or $3,000 a share, and that the value of the trust certificates received by him in 1941 was $540,000, with the result that he realized no capital gain on the exchange.

On trial the court found that the value of the trust certificates when received by plaintiff in 1941 was $540,000, or $30 each; in fact, this finding was made pursuant to stipulation of the parties at the opening of the trial. The court found that the fair market value of plaintiff's Bankers Life stock on March 1, 1913 was $1400 per share or a total of $252,000. Based on these findings the court entered judgment for plaintiff in the sum of $36,372.68, with interest.

Bankers Life was incorporated as a life insurance company under the laws of the State of Nebraska on April 6, 1887, with a capital of $100,000 divided into 1,000 shares of the par value of $100 per share, and all of this stock was outstanding on March 1, 1913. The stock was closely held on March 1, 1913, there being but five stockholders and no stockholder had a majority. Plaintiff owned 22.5 per cent of the stock; H. S. Wilson owned 31.5 per cent of the stock and D. W. Cook owned 30 per cent of the stock, the three named stockholders together owning 84 per cent of the stock. There had been no sales of this stock at or prior to 1913 and it was not a listed stock. Further facts will be developed in the course of this opinion.

In seeking reversal defendant contends that the trial court erred in finding that the March 1, 1913 fair market value of plaintiff's 180 shares of Bankers Life stock was $252,000, or $1400 a share. No question is presented as to the competency or admissibility of evidence and the sole question before us is as to the sufficiency of the evidence to sustain the challenged finding of fact. In considering this issue we must presume that the finding of fact is correct and should not be disturbed unless clearly erroneous. Rule 52 (a), Federal Rules of Civil Procedure, 28 U.S.C.A. Where, as here, the issues are tried to the court without a jury it is the function of the trial court to consider the credibility of the witnesses, to weigh the evidence and to draw inferences therefrom. Skelly Oil Co. v. Holloway, 8 Cir., 171 F.2d 670. Where a finding is challenged as being unsupported by the evidence it is not the province of this court to retry the case nor to substitute its judgment or conclusion for that of the trial court but to determine whether or not the finding is supported by substantial evidence or whether it is clearly against the weight of the evidence and hence "clearly erroneous."

The issue which the court was required to determine was the fair market value of this stock on March 1, 1913. Fair market value is the price at which property would change hands in a transaction between a willing buyer and a willing seller, neither being under compulsion to buy nor to sell and both being informed. Helvering v. Kendrick Coal & Dock Co., 8 Cir., 72 F. 2d 330; Brooks-Scanlon Corp. v. United States, 265 U.S. 106, 44 S.Ct. 471, 68 L.Ed. 934. As has been observed, there was no

evidence of transactions of purchase and sale of the stock of Bankers Life. In the absence of such evidence there is no single formula universally applicable in determining such value and in the absence of evidence of an open market for stock it is proper to consider all the circumstances connected with the corporation in determining its fair market value. Concord v. Willcuts, 8 Cir., 125 F.2d 584; Bonham v. Commissioner, 8 Cir., 89 F.2d 725; Tunnel R. Co. v. Commissioner, 8 Cir., 61 F.2d 166; Law of Federal Income Taxation, Mertens (1948 Ed.) Sec. 59.25. Among the factors that may properly be considered in determining the fair market value are corporate assets, corporate earnings, dividends, earning power of the corporation, prospects of the corporation, book value, bid and asked quotations, comparison with other stocks sold on the market, and any other factors which an informed purchaser and an informed seller would take into account. In Mertens' Law of Federal Income Taxation, Sec. 59.25, supra, the author, after enumerating many factors that may be taken into consideration in determining the value of unlisted stock, says:

> "* * * Any one of these alone may be determinative although the probabilities are that all the factors weighed and balanced against each other will give the more accurate results. Earnings usually reflect most of the other factors indicated except in the case of a new enterprise, a new product, or a new market, or some other new element which has not been in existence sufficiently long to make itself felt in the earnings record."

Section 113(a) (14) of the Internal Revenue Code, 26 U.S.C.A. § 113(a) (14), provides that,

> "In determining the fair market value of stock in a corporation as of March 1, 1913, due regard shall be given to the fair market value of the assets of the corporation as of that date."

In addition to the testimony of the expert witnesses there was a stipulation of the parties with reference to many admitted facts. Among the facts that stand without dispute are the following: The company had cash and securities at and prior to March 1, 1913, totaling $5,994,965.44. It had insurance in force totaling $38,841,915. Assets above capital and all liability, including the premium reserve on March 1, 1913, were $1,571,346.35. Its book value at the end of the year 1912 was equal to $1610.44 per share. A witness for the government testified that, "The surplus earnings after taking care of all liabilities including the increase in the statutory reserve was at least $386,000." One other witness testified that the average earnings for a period of five years ending December 31, 1912, had been $286,798 per year. There was not entire agreement among the expert accountants on this question and we can not say what testimony in this regard was accepted by the trial court. No witness on either side testified to earnings as low as $129,620. As has been noted there were 1000 shares of stock outstanding. Assuming a value of $1400 per share as found by the court and applying the earnings ratio formula which the witnesses for the government testified was reliable; to-wit, 10.8, the value of the stock as found by the court would be clearly justified, tested by the earnings. There was practical agreement among expert witnesses that the value of stock is ten times the annual surplus earnings. If the ratio of 10.8 be applied to the lowest estimate of annual earnings, the value of the stock would be $1476.55 per share. There was evidence that the book value of the stock on March 1, 1913, was $1613.44. The average appraisal of asset value per share was $1457.77. There was evidence as to the market quotations of other insurance company stock and this evidence was to the effect that by comparison the stock of Bankers Life on March 1, 1913, was worth $2330 per share.

■ As it is our function only to determine whether or not the challenged finding is clearly erroneous, Pendergrass v. New York Life Ins. Co., 8 Cir., 181 F.2d 136, we do not deem it necessary to review in detail or analyze the testimony of the various witnesses because quite aside from the opinions of the expert witnesses as to the

value of this stock there was, we think, substantial evidence abundantly sustaining the court's finding. The judgment appealed from is therefore affirmed.