ESTATE of Cora R. FITTS, Deceased, J. Russel Fitts and Frank E. Tyler, Co-Executors, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 15586.

United States Court of Appeals Eighth Circuit.

Oct. 30, 1956.

Rehearing and Transfer to Court en banc Denied Dec. 3, 1956.

Frank E. Tyler, Kansas City, Mo. (Henry W. Logan and Dietrich, Tyler & Davis, Kansas City, Mo., on the brief), for petitioners.

Carolyn R. Just, Attorney, Department of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., and Lee A. Jackson, Attorney, Department of Justice, Washington, D. C., on the brief), for respondent.

Before JOHNSEN, VAN OOSTER-HOUT, and WHITTAKER, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

The executors of the Estate of Cora R. Fitts, Deceased, have filed a timely petition to review the decision of the Tax Court of the United States placing for estate tax purposes a valuation of $375 per share upon 263¹¹⁄₁₂ shares of stock in the Fitts Dry Goods Company, hereinafter called Fitts Company, owned by Cora Fitts on the date of her death, February 10, 1949. This court has jurisdiction. Internal Revenue Code of 1954, § 7482, 26 U.S.C. § 7482.

The principal issue is whether the Tax Court's determination of value of the Fitts Company stock is clearly erroneous. Petitioners also contend error was committed in excluding evidence of valuation of the Fitts Company stock by an internal revenue agent in connection with the Webster Estate. The executors of the Cora Fitts Estate in their estate tax return valued the Fitts Company stock at $150 per share. The Commissioner in his deficiency determination found the value of the stock to be $600 per share.

The Fitts Company is a closely held family corporation engaged in the wholesale dry goods business in Kansas City. At the time of Mrs. Fitts' death there were 1,510 shares of $100 par value stock of the Fitts Company outstanding, of which the family owned 1,037½ shares. Jesse Fitts, husband of the decedent, became interested in Fitts Company in 1906. Since 1929 the Fitts family has been in control. J. Russel Fitts, the decedent's son and the beneficiary of decedent's Fitts stock, is president and principal managing officer of the company. Other members of the family are with the company in executive capacities.

Many of the financial records of the Fitts Company are in the record by stipulation, including summaries prepared by an accountant for the period from December 31, 1944, to 1954, inclusive, of balance sheets, gross sales, net income, and dividends. The reconciled balance sheets show that during the 1944–1954 period the book value of the Fitts stock has at all times been above $500 per share and that the book value for 1949 was $685.31 per share. Dividends of $15 per share were paid for 1944 through 1949. Net earnings per share after taxes were as follows:

| Year | Net Income Per Share |
| --- | --- |
| 1945 | $ 43.79 |
| 1946 | 173.64 |
| 1947 | 44.12 |
| 1948 | 49.21 |
| 1949 | (36.91) |
| 1950 | 59.07 |

It is conceded that the 1946 profits were due to unusual war conditions. The Tax Court fairly summarizes the petitioners' evidence as to the value of the Fitts stock as follows:

"At the hearing, petitioner presented a number of witnesses who expressed their opinions as to the fair market value of the stock. These witnesses gave opinions of value varying from $150 per share upwards to $225. Their experience on questions of valuation need little comment. One witness had some in-

terest in the determination of the question; two others were connected with brokerage and investment firms; and one was a certified public accountant. All had some qualifications in expressing his opinion as to the value of the stock. Otherwise it is sufficient to say that we have not ignored their testimony in reaching our conclusion herein."

Petitioners' witnesses testified that the book value had but little bearing upon market value, and that in many listed stocks, market value ranged from one-fourth to one-half of book value. An effort was made to compare the Fitts Company stock with various other stocks, but substantial differences exist between the companies used for comparison and the Fitts Company. The testimony of petitioners' experts shows that they relied to considerable extent upon the stipulated financial records. The facts will be further developed hereinafter.

The issue the Tax Court was required to determine was the fair market value of the Fitts Company stock on February 10, 1949. The executors of the Fitts estate elected to have the estate valued as of the date of Mrs. Fitts' death.

 Fair market value is the price at which property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell. Treasury Regulations 105, § 81.10; O'Malley v. Ames, 8 Cir., 197 F.2d 256. The Fitts Company stock is not listed upon any stock exchange. In determining the value of unlisted stocks, actual sales made in reasonable amounts at arm's length, in the normal course of business, within a reasonable time before or after the basic date, are the best criterion of market value. Treasury Regulations 105, § 81.-10(c); Elmhurst Cemetery Co. of Joliet v. Commissioner, 300 U.S. 37, 39, 57 S. Ct. 324, 81 L.Ed. 491. A few small sales of Fitts Company stock were made between members of the Fitts family at prices ranging from $110 to $128 per share. The prior sales occurred three

years or more before the basic date and the subsequent sales were five years after the basic date. Such sales were too remote to require the Tax Court legally to regard them as establishing value upon the basic date. Moreover, the burden is upon the taxpayer to demonstrate that the sales relied upon are arm's length sales in the normal course of business. Brooks v. Willcuts, 8 Cir., 78 F.2d 270, 272. The petitioners have not met this burden.

Treasury Regulations 105, § 81.10(c), provides that, absent bona fide sales or bids and offers, the value of an unlisted stock is arrived at "upon the basis of the company's net worth, earning power, dividend-paying capacity, and all other relevant factors having a bearing upon the value of the stock. Among such other relevant factors to be considered are the values of securities of corporations engaged in the same or a similar line of business which are listed on an exchange. However, the weight to be accorded such comparisons or any other evidentiary facts considered in the determination of a value depends upon the facts of each case. * * *" This regulation is elaborated upon in Rev.Rul. 54–77, §§ 2 and 4, 1954–1 Cum.Bull. 187. We quote in part from such ruling as follows:

"* * * The following factors, although not all-inclusive, are fundamental and require careful analysis in each case:

"(a) The nature of the business and the history of the enterprise, including the date of incorporation.

"(b) The economic outlook in general and the condition and outcome of the specific industry in particular.

"(c) The book value of the stock and the financial condition of the business.

"(d) The earning capacity of the company.

"(e) The dividend-paying capacity.

"(f) Goodwill.

"(g) Sales of the stock and the size of the block of stock to be valued.

"(h) The market price of stocks of corporations engaged in the same or a similar line of business which are listed on an exchange."

This court in O'Malley v. Ames, supra, 197 F.2d at page 258, in considering a stock valuation problem similar to the one with which we are confronted here, states:

" * * * there is no single formula universally applicable in determining such value and in the absence of evidence of an open market for stock it is proper to consider all the circumstances connected with the corporation in determining its fair market value. * * * Among the factors that may be properly considered in determining the fair market value are corporate assets, corporate earnings, dividends, earning power of the corporation, prospects of the corporation, book value, bid and asked quotations, comparison with other stocks sold on the market, and any other factors which an informed purchaser and an informed seller would take into account. * * * "

Other cases in which in the absence of bona fide sales the value of closely held stock was determined upon the basis of financial data of the company are: Bank of California, National Ass'n v. Commissioner, 9 Cir., 133 F.2d 428; Kline v. Commissioner, 3 Cir., 130 F.2d 742; O'Bryan v. Commissioner, 6 Cir., 127 F.2d 645. See also Mertens Law of Federal Income Taxation, Vol. 10A, § 59.-25.

■ The financial data in the record fully support the Tax Court's valuation. The 1949 balance sheet shows the Fitts Company to be in excellent financial condition and relatively liquid. The assets total $1,339,601. Of this total, $218,964 is cash, $559,490 merchandise inventory, and $420,131 accounts receivable. Ninety-three per cent of the accounts receiv-

able was paid within ninety days. No item of goodwill is included in the assets. The physical plant is carried at $79,900. Furniture and fixtures and land are carried at $1 each. Current liabilities total $354,862. Capital is carried at $151,000 and retained earnings amount to $833,738. There is some evidence of a decline in sales. The sales for each of the years 1944 and 1945 were in the neighborhood of $5,000,000. They reached a peak in the banner year of 1946 of $7,500,000, were about $6,300,000 in 1948, and about $4,500,000 in 1949. There was evidence that the decrease in sales was due to an increase in chain stores and increased direct sales from manufacturers to retailers. The company had been in business a long time, was in good financial position, and had an excellent credit rating. The $375 per share valuation fixed by the Tax Court is approximately 55 per cent of the 1949 book value. The net earnings per share after taxes have heretofore been set out. For the 1945–1949 period these earnings averaged about $54 per share per year. This figure is perhaps subject to some discount because of the abnormal 1946 earnings. Dividends of $15 per share were paid each year during the 1945–1949 period. All of the foregoing evidence was pertinent upon the various factors to be considered in determining value.

■ The petitioners argue that since no evidence was offered by the Commissioner to directly refute or contradict the testimony of their expert witnesses, such testimony should be given great weight. The petitioners' witnesses were reputable and qualified. The court says it did consider their testimony. The value of the stock was reduced from the value of $600 per share fixed by the Commissioner to $375 per share. The evidence of competent impartial expert witnesses should not be arbitrarily ignored and disregarded. However, where there is substantial evidence in the record to support the court's decision, the court is not bound by the opinion of the experts. Helvering v. National Grocery Co., 304

U.S. 282, 58 S.Ct. 932, 82 L.Ed. 1346; Gloyd v. Commissioner, 8 Cir., 63 F.2d 649, 650; O'Bryan v. Commissioner, supra, 127 F.2d at pages 646–647; Rogers v. Helvering, 2 Cir., 107 F.2d 394, 395; Bank of California, National Ass'n v. Commissioner, supra, 133 F.2d at page 432. In the Gloyd case the court states, 63 F.2d at page 650:

> "Of course, there must be substantial evidence to support the finding of the Board or it cannot stand, but we do not understand the law to be that the Board is compelled to accept the evidence of experts as to values of property. It is within its province to accept such evidence in toto, in part, or not at all. Its weight is with the trial Board, and its worth is for its sound judgment to determine. It is not required to surrender its judgment to the judgment of experts. It is the one to determine the facts—not the experts."

We have heretofore demonstrated that there was adequate financial data in the record to support the court's determination of value. The primary responsibility is upon the court to determine the value, and when there is substantial evidence to support its determination it is not required to surrender its right and duty to determine value to the expert witnesses.

The distinguishing feature between this case and Cullers v. Commissioner, 8 Cir., 237 F.2d 611, is that in the Cullers case we found that there was no substantial evidence to support the court's determination of value. Here, we have found that substantial evidence exists to support the valuation determination.

■ As an appellate court we are not permitted to retry the case and substitute our judgment for that of the Tax Court. A reversal is warranted only if the judgment appealed from is clearly erroneous. The Supreme Court in United States v. U. S. Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746, defines "clearly erroneous" as follows:

> " * * * A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."

Upon the record before us, after giving full consideration to the testimony of the expert witnesses, to the financial data, and to all other evidence in the record, we can not say that the Tax Court's decision is not supported by substantial evidence, or that we are left with a firm conviction that a mistake has been committed.

■ We now pass to a consideration of petitioners' contention that the court committed prejudicial error in excluding testimony as to the valuation of the Fitts Company stock for tax purposes in the Webster estate. The Webster testimony was objected to on the ground that Mr. Webster, spouse of Emma Webster, who had served as executor of Mrs. Webster's estate but had been discharged upon completion of his duties, did not have standing to waive the privilege of nondisclosure. The Commissioner cites no authority in support of this objection, except §§ 55(a) (2) and 938 of the Internal Revenue Code of 1939, 26 U.S.C. §§ 55(a) (2), 938. We do not consider the objection valid upon the ground of privilege. The Commissioner also objected to the Webster testimony on the ground that it was immaterial. An offer of proof disclosed that Mrs. Webster died on September 9, 1949, owning 25 shares of stock of the Fitts Company. Such shares were returned for estate tax purposes at $150 per share. A letter to the executor from the Internal Revenue Bureau sets out the agreed adjustment of tax liability of the Webster estate, the letter containing the sentence, "You have indicated your agreement to the adjustment of tax liability shown in the report." The schedules attached to the letter show valuation increases on seven items of real estate and three items of stocks and bonds, including raising the valuation of the Fitts Company stock to $5,000, or $200 per share, the total increases amounting to some $65,000. There is no indication as to how the values were arrived at, wheth-

er any effort was made to make a complete investigation of the value of the Fitts stock, or whether the valuation was merely part of a compromise adjustment.

Under all of the circumstances, we are inclined to believe that the court did not abuse its discretion in rejecting the offered evidence. In any event, the valuation of the stock in the case of one taxpayer would be no binding adjudication of its value in the case of another taxpayer, and such evidence would be of little probative value in the absence of a showing that the valuation was arrived at after a thorough investigation. Rule 61 of the Federal Rules of Civil Procedure, 28 U.S.C. provides that no error in the admission or exclusion of evidence is ground for disturbing a judgment unless the refusal to take such action appears to be inconsistent with substantial justice, and that an appellate court shall disregard all errors which do not affect the substantial rights of the parties. See also 28 U.S.C. § 2111.

Petitioners' experts fixed the value of the Fitts Company stock at approximately $200 per share. This is the value the petitioners contend the Webster evidence establishes. We consider the opinion testimony of the qualified experts produced by petitioners more persuasive than the Webster evidence. The Webster testimony was cumulative in nature and its exclusion did not affect the substantial rights of the parties. We are convinced that if the Tax Court had admitted and considered the Webster evidence it would have reached no different result than it did.

Petitioners' contention that the court's decision violates the requirement of equality in taxation is wholly without merit and requires no discussion.

The decision of the Tax Court is affirmed.

WHITTAKER, Circuit Judge (dissenting).

I respectfully dissent. I disagree on two bases.

First, I believe that there was no substantial evidence to support the Tax Court's finding of fair market value, but even if it may be said that there was, I am left with the conviction that a mistake has been committed by the Tax Court in making that finding and that it is "clearly erroneous", within the meaning of that phrase as defined in the Gypsum case, 333 U.S. 395, 68 S.Ct. 542.

The issue was: What was the fair market value, per share, of the stock in question at the date of Mrs. Fitts' death on February 10, 1949? As correctly said by the majority, fair market value is the price that a willing buyer would pay and a willing seller would take for the property—in other words, it is what you could get for it.

Petitioners returned this stock at $150.00 per share. The Commissioner set it up at $600.00 per share. The Tax Court found its value to be $375.00 per share—an exact split of the difference between the parties. This is reminiscent of the pun about the old justice of the peace who made his decisions upon the basis that there are three sides to every lawsuit—the plaintiff's side, the defendant's side and the right side, which is the middle. Upon what evidence does that finding rest? I think none at all. Petitioners put on three entirely independent, highly credible, and thoroughly competent, experts in this particular field who were altogether familiar with local conditions and with this company, and with the probable purchasers of its stock and with what they might reasonably be expected to be willing to pay for it. After taking into account all relevant factors, including the very fiscal information offered and solely relied on by the Commissioner, as later stated, they swore that all you could reasonably expect to get for the stock on the date of Mrs. Fitts' death was $200.00 to $225.00 per share, and that such was its fair market value at that time. On the other hand, the Commissioner's evidence consisted only of accountants' summaries of balance sheets, gross sales and net income of the company, and of the book value of its stock and the dividends paid thereon, through the period December 31, 1944 to

January 1, 1954—the very fiscal information taken into account by the three experts mentioned as some of the factors they considered in concluding that the most you could reasonably expect to get for the stock was from $200.00 to $225.00 per share.

I submit that this evidence does not afford any basis of support for a determination of fair market value at $375.00 per share. I agree with the statement of the majority that the Tax Court is not bound by the opinions of experts, but, in circumstances like these, it may not properly ignore them, but even if it does, certainly it must have some substantial evidence upon which to rest its finding of fair market value. If, here, the Tax Court had credited the three experts, it would have had an adequate evidentiary basis to support a finding of $200.00 to $225.00 per share, but not $375.00 per share. And if it did not credit those experts, it had only the Commissioner's evidence of fiscal history of the company upon which to make its finding, and that information, standing alone, does not, in my view, afford an adequate basis, or any substantial evidence, upon which to make a determination of what reasonably could be gotten for decedent's stock, and I would so hold. And I fear that any contrary holding sanctions the perilous doctrine of placing the Tax Court's findings of fair market value beyond any meaningful or effective judicial review, for if we permit the Tax Court to ignore the only evidence there is as to what reasonably could be gotten for shares of stock in a closely held corporation, and to make its conclusionary finding solely on book data, and thus without any legal standards, certainly without any reviewable ones, we would be paying only lip service to, and making a mockery of, the common-sense and fundamental rule that fair market value of such property is what one could reasonably get for it.

These are my reasons for feeling that the Tax Court's finding is not supported by any substantial evidence, and are the basis of my conviction that, even if the contrary may be said, a mistake has been made by the Tax Court and its findings are clearly erroneous.

Second, I think the Tax Court erred in rejecting, and in refusing to receive and consider, the evidence proffered by petitioners, showing that, in the Webster estate, the Commissioner—the respondent here—determined that the stock of this very company, in the very year in question, had a fair market value of $200.00 per share.

Mrs. Fitts died February 10, 1949. Mrs. Webster died September 9, 1949. Each died seized of shares of stock in Fitts Dry Goods Company. This was fungible property, exactly the same— more alike than two peas in a pod. The executor of the Webster estate returned the stock, for Federal estate tax purposes, at $150.00 per share. The Commissioner proposed an adjustment to $200.00 per share. The executor accepted the proposal. But when petitioners sought to offer that evidence before the Tax Court on the trial of this case the Commissioner objected upon the grounds (1) that the witness, Mr. Webster, had been discharged as executor of his wife's estate and was then without right to waive the privilege of non-disclosure, and (2) that this evidence was immaterial to the issue being tried. The Tax Court sustained the objection. Counsel for petitioners then made a proper offer to prove the mentioned facts. The same objections were made to the offer, and were again sustained by the Tax Court.

The majority, quite properly, hold that there was no merit in the first ground of the objection, but they appear to hold, I think erroneously, that the second ground of the objection was good—that the proffered evidence was immaterial to the issue being tried—for they say they believe the Tax Court "did not abuse its discretion in rejecting the offered evidence", and that it would not have the effect of a "binding adjudication" of the stock's value, and "would be of little probative value in the absence of a showing that the valuation was arrived at after a thorough investigation." I do not understand the law to be that any

736

court has a discretion to reject and refuse to consider competent, noncumulative, evidence, bearing directly and potently upon the issue being tried—and especially not if it is afterward to find the issue against the one offering such evidence. I do not contend that the proffered evidence would have the effect of a binding adjudication, but I do contend that it was competent and noncumulative, and material to the issue on trial, and that the Tax Court had no right or discretion to reject it and to refuse to consider it at all. As to the statement that the Webster evidence would be of little probative value in the absence of a showing that the valuation was arrived at after a thorough investigation, I must observe that any question respecting its "probative value" could not render it immaterial nor authorize its rejection, and whether the Commissioner made the adjustment to $200.00 per share with or without a thorough investigation, was a matter for him, not for petitioners, to show, after the evidence be received—thus to show what weight should be accorded it.

The majority believed that the proffered evidence was "cumulative in nature." I cannot agree. I think it did not accumulate to anything offered by petitioner, but was of a markedly different character than any other evidence they offered. It was evidence that the very same Commissioner—petitioners' adversary—who was here contending for a valuation of $600.00 per share, had earlier made a determination [presumptively correct] that this very property had a fair market value in the very year in question of only $200.00 per share.

The majority appear to be of the view that exclusion of the Webster evidence, even if error, was not prejudicial, for they say they are convinced that if the Tax Court had admitted and considered the proffered evidence, it would have reached the same result. I cannot argue that statement, but do say that it should be presumed that if the Tax Court had received and considered the proffered evidence, as I think it should have, it would have given it fair consideration.

I would reverse and remand to the Tax Court with directions to receive and consider the proffered Webster evidence and to make an entirely new determination of the fair market value of the stock in question.