Penn-Warrington Hosiery Mills, Inc. v. Commissioner.
Penn-Warrington Hoisery Mills, Inc. v. Commissioner
Docket No. 80608.
United States Tax Court
T.C. Memo 1961-211; 1961 Tax Ct. Memo LEXIS 139; 20 T.C.M. (CCH) 1050; T.C.M. (RIA) 61211; July 17, 1961
*139 All of the stock of petitioner and of K & S Corporation was owned 50 percent by the Kruse family and 50 percent by the Slattery family. Due to dissension between the families it was decided the Kruse family would take over petitioner and the Slattery family would take over K & S. The exchange was accomplished by the Slattery family's assigning its 50 percent of petitioner's stock to K & S and the Kruse family assigning its 50 percent of K & S stock to petitioner, and having the corporations execute an agreement whereby petitioner transferred its stock in K & S to the latter and K & S transferred its stock in petitioner to petitioner. The agreement also provided K & S transfer to petitioner the title to 20 knitting machines and petitioner pay K & S a machine rental obligation of $90,000. Held, the capital gain petitioner realized is taxable as the transaction does not qualify as a "reorganization" under section 368, Internal Revenue Code of 1954, and it does not meet the requirements of section 355, I.R.C. of 1954, for a distribution without recognized gain. Held, further, petitioner failed to establish the fair market value of the stock petitioner received in the transaction was less *140 than respondent determined. Howard G. Kulp, Jr., Esq., 628 Cooper St., Camden, N. Y., for the petitioner. David E. Crabtree, Esq., for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: The respondent determined a deficiency in the petitioner's income tax for 1953 in the amount of $10,511.58. The issues are: (1) Whether the gain realized by petitioner in a transaction between petitioner and another corporation in 1955 should be recognized within the meaning of section 355 or section 361 of the Internal Revenue Code of 1954; and (2) Whether the fair market value of stock received by the petitioner in the 1955 transaction was $55,998.66 or some lesser amount. The availability of a net operating loss carry-back to 1953 depends upon the disposition of the above issues. Findings of Fact Some of the facts have been stipulated and they are hereby incorporated by this reference. Penn-Warrington Hosiery Mills, Inc., hereinafter called petitioner, is a corporation organized under the laws of Pennsylvania on June 22, 1948, with its principal place of business in Warminster, Pennsylvania. Petitioner filed its income tax returns for the years 1953 through 1957 with *141 the district director of internal revenue at Philadelphia, Pennsylvania. Kruse & Slattery, Inc. was incorporated in 1929. It was originally engaged in tool and die making and also general machine work. Later, a considerable portion of its business was the repair and reconditioning of hosiery machinery. In 1948 Kruse & Slattery, Inc. leased hosiery knitting machines to petitioner. Petitioner commenced its hosiery manufacture business in 1948 with paid-in capital of $2,000, of which one-half was contributed by the Kruse family and one-half by the Slattery family. In the years 1950 through 1954, Kruse & Slattery, Inc. had a total net profit of $185,106.71 from its tool and die business, while its total net profit from the rental of hosiery machinery was $219,411.76. In 1954, Kruse & Slattery, Inc. had a net loss of $8,100 from its machinery rentals, while its net profit from the tool and die business was $7,530.53. It is stipulated that the balance sheet of Kruse & Slattery, Inc., as of December 31, 1954, showed the following items: Stock
$ 94,300.00
Surplus
312,547.59
Capital
$406,847.59
Knitting machines
$386,000.00
Less reserve
163,500.00
Book value Dec. 31, 1954
$222,500.00
Petitioner had net *142 earnings from its operations in the years 1950 through 1953 of $75,353.84, $49,610.30, $66,150.57 and $31,010.63, respectively. For the years 1954 through 1957 the petitioner had net losses from its operations of $30,644.31, $57,570.09 (excluding capital gain which is here in dispute), $30,190.68 and $40,774.82. Petitioner owed $95,000 to Kruse & Slattery, Inc. as of December 31, 1954. The balance sheet of petitioner, as of December 31, 1954, showed the following: Total assets
$216,294.92
Total liabilities
$104,297.60
Capital stock
110,000.00
Earned surplus
1,997.32
$216,294.92
Late in 1954 or early in 1955, dissension between the Kruse and Slattery families in the operation of both petitioner and Kruse & Slattery, Inc. reached an intolerable point, and methods were discussed for dividing the two business entities between the families. On January 1, 1955, the Kruse family and the Slattery family each owned 50 percent of the stock of Kruse & Slattery, Inc. and each family owned 50 percent of the stock of petitioner. Some time between January 28, 1955 and February 8, 1955, the Slattery family assigned to Kruse & Slattery, Inc. 50 shares of the stock in petitioner, which was 50 percent of the *143 total of petitioner's outstanding stock. Within the same period, the Kruse family assigned to petitioner 371 1/2 shares of common stock and 100 shares of preferred stock of Kruse & Slattery, Inc., which shares represented one-half of the total outstanding common and preferred shares of Kruse & Slattery, Inc. On February 8, 1955, the petitioner and Kruse & Slattery, Inc. executed an agreement under which the petitioner agreed to assign to Kruse & Slattery, Inc. the 371 1/2 shares of common stock and 100 shares of preferred stock of Kruse & Slattery, Inc., which was held by petitioner, and Kruse & Slattery, Inc. agreed to assign to petitioner the 50 shares of stock of petitioner and title to the 20 knitting machines which were owned by Kruse & Slattery, Inc. and had been leased to the petitioner. It was also agreed that petitioner would pay its outstanding machine rental obligation (adjusted to $90,000) to Kruse & Slattery, Inc. in a designated series of payments. It is stipulated that the "value of the machinery transferred to petitioner, in accordance with the terms of the agreement * * *, was $120,000.00. This amount was what the machinery was worth to petitioner for use in its hosiery *144 business." Petitioner reported a net loss of $57,570.09 on its income tax return for 1955, which it carried back to 1953 as a net operating loss deduction. Respondent included a capital gain of $128,848.66 in petitioner's income for 1955 with the following explanation: There is included in taxable income for the year 1955 a capital gain, in the amount of $128,848.66, realized on the exchange of assets with Kruse & Slattery, Inc. In the determination of the amount realized, the fair market value of machinery received has been determined to be $120,000.00 and the fair market value of the shares of Penn Warrington Hosiery Mills, Inc. received have been determined to be $55,998.66. This adjustment by respondent in 1955 eliminated the net operating loss carry-back to 1953, which gave rise to the deficiency determined by respondent in petitioner's income tax for 1953. Due to other adjustments in petitioner's income for 1955, as indicated in the respondent's statutory notice of deficiency, the petitioner's "Taxable income corrected" for 1955 is shown there as "None." Opinion Respondent contends that the agreement of February 8, 1955 does not qualify as a "reorganization" under section 368 of the Internal Revenue Code of 1954, *145 [1] and that, consequently, the provision for the nonrecognition to a corporation of gain or loss under section 361, which applies only if there is an exchange of property between corporations pursuant to a plan of "reorganization" within the meaning of section 368, has no application here. Therefore, respondent argues, the capital gain of $128,848.66 realized by petitioner when it "transferred the Kruse & Slattery stock, worth $47,150.00, to Kruse & Slattery in exchange for $120,000.00 worth of knitting machines and its own stock, then worth $55,998.66," is includible in petitioner's income for 1955. Petitioner, on the other hand, makes no serious argument on brief that sections 361 and 368 apply. Instead, petitioner relies upon section 355, which provides for the nonrecognition to a shareholder of gain or loss where a corporation distributes to its stockholder stock of a controlled corporation. It is clear that the exchange by petitioner of the Kruse & Slattery, Inc. stock (which had been assigned to petitioner early in 1955 by the Kruse family) for the hosiery knitting machines and *146 the petitioner's stock (which had been assigned to Kruse & Slattery, Inc. by the Slattery family early in 1955) does not fit within any of the several definitions of "reorganization" listed in section 368. Only the "D" type reorganization under section 368 could possibly have any bearing upon the facts of this case. Section 368(a)(1)(D) describes this type of reorganization, as follows: SEC. 368. DEFINITIONS RELATING TO CORPORATE REORGANIZATIONS. (a) Reorganization. - (1) In general. - For the purposes of parts I and II and this part, the term "reorganization" means - * * *
(D) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor, or one or more of its shareholders (including persons who were shareholders immediately before the transfer), or any combination thereof, is in control of the corporation to which the assets are transferred; but only if, in pursuance of the plan, stock or securities of the corporation to which the assets are transferred are distributed in a transaction which qualifies under section 354, 355, or 356; Obviously this subsection does not apply here. Neither of the two corporations (nor *147 its stockholders) was in control of the other after the transfer of assets, since each corporation acquired its own stock in the exchange. Nor did either of the corporations distribute to is stockholders any stock or securities of the corporation to which the assets were transferred. No further discussion is needed to show that the transaction between the two corporations failed to meet both of the requirements of a type "D" reorganization. Section 355[2] *148 *149 permits the distribution by a corporation to its shareholders of the stock or securities of a controlled corporation, under carefully prescribed conditions, without the recognition of any gain or loss by the stockholder who received such stock or securities. This section applies whether or not the distribution is in pursuance of a plan of reorganization (within the meaning of section 368(a)(1)(D)). It permits the separation of two or more businesses formerly operated, directly or indirectly, by a single corporation. Again, it is manifest that the transaction here involved does not fall even remotely within the requirements of section 355. No purpose would be served in relating to any extent the reasons for this failure to qualify, since petitioner acknowledges on brief that it "failed to carry out to the letter the precise requirements of the statute." It will suffice to point out (1) that neither corporation at any time exercised the necessary "control" over the other corporation, [3] and (2) there was never any distribution by a corporation of the stock of a "controlled corporation" to its shareholders. Petitioner seeks to excuse its failure to meet the statutory requirements by indicating that section 355 was a new provision *150 in the Internal Revenue Code of 1954; that it was "not until ten months after the reorganization in February 1955, that the regulations were issued" under this section; and that if petitioner "had the benefit of the regulations [it] would have made use of the spin-off to have accomplished the same end result." "The fact that the regulation was not promulgated until after the transactions in question had been consummated is immaterial." Helvering v. Reynolds, 313 U.S. 428. This is especially true when the section itself, even without the benefit of any regulations, lays out quite clearly certain basic requirements which petitioner could have followed in working out a corporate separation. Moreover, section 355 was derived from section 112(b)(3) and (11) of the Internal Revenue Code of 1939, so it is by no means an innovation with the Internal Revenue Code of 1954. Finally, petitioner urges that we "should consider the substance and not the form in this case, particularly because of the fact that a spin-off could have been used under the facts of this case wherein the final result would have been the same as was accomplished by the method used in this case." Although the transaction *151 might have been cast in a form which would qualify for nonrecognition of gain, it was not and the "decision must be made upon the basis of what was actually done rather than upon what might have been done." Television Industries, Inc., 32 T.C. 1297, affd. 284 F. 2d 322. The next issue is whether the respondent correctly computed the capital gain realized by petitioner on the exchange of assets in 1955. As we have indicated earlier in the opinion, the respondent valued the 20 knitting machines and the 50 shares of petitioner's stock, which was received by petitioner from Kruse & Slattery, Inc., in the amounts of $120,000 and $55,998.66, respectively. Petitioner, in exchange for the machines and its own stock, transferred its Kruse & Slattery, Inc. stock (371 1/2 shares of common and 100 shares of preferred stock) to Kruse & Slattery, Inc. This stock is valued in the respondent's computation at $47,150, so that the capital gain computed by the respondent is $128,848.66 ($120,000 plus $55,998.66, minus $47,150). It has been stipulated that the "value of the machinery transferred to petitioner" was $120,000, and it is not open to petitioner now to establish some different value for *152 the machines. There seems to be no dispute over the value used for the Kruse & Slattery, Inc. stock transferred by the petitioner. This amount, $47,150, appears to be one-half of the amount (stipulated as "Stock - $94,300.00") which appears on the Kruse & Slattery balance sheet of December 31, 1954. The value attributed by respondent to the 50 shares of petitioner's stock ($55,998.66) was obtained from the petitioner's balance sheet of December 31, 1954, as follows: Capital stock (100 sh.)
$110,000.00
Surplus
1,997.32
$111,997.32
One-half of above amount
$ 55,998.66 Petitioner argues that this amount, based upon its own books, is erroneous because respondent failed to consider (1) the chaotic conditions that existed in the hosiery manufacturing business in 1954; (2) the high cost of labor in northern factories; (3) the gloomy outlook for the hosiery manufacturing business in the future; and (4) the losses suffered by petitioner in its operations in 1954 and in years subsequent to 1955. Petitioner does not suggest what the value of the 50 shares of its stock should be, but merely states on brief that the "actual value of the stock involved in this transaction could not under any circumstances *153 be equal to the book value" and that "No willing buyer would have offered anything but a nominal figure for those shares." Petitioner has the burden of proving that the valuation used by the respondent was erroneous. Fair market value is a question of fact to be determined from all the evidence. Apart from some broad generalities, for the most part unsupported, as to the plight of the hosiery manufacturing industry at this time, petitioner introduced no evidence to show that the fair market value of 50 shares of its stock was less than $55,998.66. Many factors enter into determining the fair market value of stock, Fitts' Estate v. Commissioner, 237 F. 2d 729, affirming a Memorandum Opinion of this Court, but petitioner did not resort to them. Certainly the fact that petitioner incurred losses in 1954 through 1957, coming after a period of substantial earnings, does not by itself support a conclusion that the value of the stock in 1955 was merely a "nominal figure." For all we know, such losses may have been due to a temporary decline in the industry, or they might easily have been caused by management policies. At any rate, the Kruse family certainly did not think that the 50 shares *154 in petitioner's stock had a fair market value of only a "nominal figure" in 1955, since it was quite willing (in order to obtain control of petitioner) to give up a half-interest in an established corporation with an impressive earnings record, and with an earned surplus of $312,547.59 as of December 31, 1954. We hold that petitioner has failed to show that the fair market value of its stock, received by it in the 1955 exchange, had a fair market value of less than $55,998.66. Decision will be entered under Rule 50. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.↩
2. SEC. 355. DISTRIBUTION OF STOCK AND SECURITIES OF A CONTROLLED CORPORATION. (a) Effect on Distributees. - (1) General rule. - If - (A) a corporation (referred to in this section as the "distributing corporation") - (i) distributes to a shareholder, with respect to its stock, or (ii) distributes to a security holder, in exchange for its securities, solely stock or securities of a corporation (referred to in this section as "controlled corporation") which it controls immediately before the distribution, * * *
(C) the requirements of subsection (b) (relating to active businesses) are satisfied, and (D) as part of the distribution, the distributing corporation distributes - (i) all of the stock and securities in the controlled corporation held by it immediately before the distribution, or (ii) an amount of stock in the controlled corporation constituting control within the meaning of section 368(c), and it is established to the satisfaction of the Secretary or his delegate that the retention by the distributing corporation of stock (or stock and securities) in the controlled corporation was not in pursuance of a plan having as one of its principal purposes the avoidance of Federal income tax, then no gain or loss shall be recognized to (and no amount shall be includible in the income of) such shareholder or security holder on the receipt of such stock or securities. (2) Non pro rata distributions, etc. - Paragraph (1) shall be applied without regard to the following: (A) whether or not the distribution is pro rata with respect to all of the shareholders of the distributing corporation, (B) whether or not the shareholder surrenders stock in the distributing corporation, and (C) whether or not the distribution is in pursuance of a plan of reorganization (within the meaning of section 368(a)(1)(D)↩).
3. Section 368(c) defines "control" as 80 percent for purposes of section 355↩.